## JACKSON, ex dem. PRESTON AND OTHERS, against SMITH.

Where the defendant, having purchased a lot of land, and received a deed for the whole lot, in which the grantor stated himself to be the heir of the patentee, and he entered into possession under that deed, and it, afterwards, appeared that the grantor had title to one ninth part of the lot only, as a *tenant in common*, this was held not to alter the character of the defendant's possession, so as to prevent its being adverse; but that he must be deemed to have entered under his deed, as sole owner in fee of the whole lot.

Possession of land by a purchaser under a deed for the entire lot, given without right in the grantor, is adverse to the rightful owners, though tenants in common with the grantor; and a subsequent deed executed by them, during such adverse possession, is inoperative and void, and subsequent releases by them to the grantor of the defendant, or the person under whom he derives title, enures to the benefit of the defendant.

A person in possession of land claiming title, may purchase in an outstanding title, to protect that possession.

THIS was an action of ejectment for lot No. 7. in the township of *Ovid*, and was tried at the *Seneca* circuit, in *June*, 1815, before Mr. Justice *Van Ness*.

The lessor of the plaintiff gave in evidence the letters patent for lot No. 7. in *Ovid*, to *Jacob Van Gelder*, bearing date the 13th of *September*, 1790, to which was attached a certificate from the secretary of state, that the patentee's name was entered in the ballot-book, and that he was described as a dead soldier, formerly belonging to the 5th regiment; (*Godwin's*

*company*,) and that from the list of dead soldiers, on file in the office, it appeared that the patentee died the 18th of *January*, 1779.

The plaintiff proved that the patentee served as a soldier in the *New-York* line of the army, and died about 18 months before the end of the revolutionary war, and left nine children, to wit, *Jacob*, (the eldest,) *Reuben*, *William*, *Elijah*, *Mary*, *Abigail*, *Elizabeth*, *Mercy*, and *Sally*, all of whom were born before their father enlisted as a soldier.

The plaintiff, also, gave in evidence a deed from *Jacob*, *William*, and *Elijah*, three of the children of the patentee, to *William Preston*, for the lot in question, dated the 15th of *March*, 1798, for the consideration of 1,000 dollars, and recorded the 14th of *May*, 1798 ; also, a deed from *William Preston*, for the same lot, to *David Matthews*, dated the 4th of *October*, 1798, for the consideration of 1,500 dollars, and recorded the 27th of *June*, 1799 ; also, the last will of *David Matthews*, dated the 29th of *August*, 1810, by which he devised an undivided moiety of the lot to *John Matthews*, his only son, and the remaining moiety to his son *John*, and to *Robert Morris*, and *Garrit Wendell*, *in trust*, for certain purposes stated in the will ; and, also, a deed from *Elijah Van Gelder*, *David Van Gelder*, and *Abigail* his wife, *Solomon Van Gelder*, and *Mercy* his wife, *Elizabeth Philo*, *Sally Van Gelder*, and *Joseph Van Gelder*, and *Mary* his wife, to *William Preston*, for the same lot, dated *February* the 13th, 1798, and recorded the 15th of *May*, 1814.

The defendant gave in evidence, 1. A deed from *Reuben Van Gelder*, styling himself administrator and heir of *Jacob Van Gelder*, to *Stephen Thorne*, dated the 13th of *October*, 1791, for lot No. 7. in *Ovid*, for the consideration of 40 dollars ; the deed was recorded the 16th of *September*, 1813, and contained no mention of any order of the court of probate, or of a surrogate, to authorize the sale. 2. A deed, with warranty, from *Stephen Thorne* to *Peter Smith*, for the same lot, for the consideration of 140 pounds, dated the 14th of *February*, 1794, recorded the 17th of *December*, 1795. The admission of this deed was objected to, because, in the certificate of acknowledgment endorsed, it was not stated that the judge before whom it was taken had personal knowledge of the grantor, or had received satisfactory proof of his identity ; but the objection was

overruled. 3. A quit-claim deed from *Jacob, William,* and *Elijah Van Gelder,* to *Reuben Van Gelder,* for the consideration of 16 pounds, dated the 7th of *January,* 1792, proved the 6th of *May,* 1791, by *Stephen Thorne,* a subscribing witness, and recorded the 25th of *January,* 1802. 4. A quit-claim deed of the same lot from *Sarah, Mercy, Mary,* and *Abigail Van Gelder,* and *Elizabeth Wichill,* to *Reuben Van Gelder,* for the consideration of 5 dollars, dated the 22d of *January,* 1812. 5. A deed from *Solomon Van Gelder, Elijah Van Gelder,* and *Joseph Van Gelder* to *Reuben Van Gelder,* of the same lot, for the consideration of 5 dollars, dated the 19th of *August,* 1813; and, 6. A deed from *Peter Smith,* the elder, to the defendant, dated the 8th of *December,* 1807, for 214 and one fourth acres, part of the said lot.

The defendant proved that he and his father had lived on the lot 24 years; and the witness stated that in *July* or *August,* 1792, *Stephen Thorne* came to his house and said he owned the lot, and the witness went with him to the lot, when *Thorne* told the defendant and his father, that he owned the lot, and the father of the defendant then purchased the lot of *Thorne,* but the witness did not know whether a deed was given, or how the business was done. It was further proved, on the part of the defendant, that, when *Preston* first attempted to purchase the lot of the heirs of the deceased soldier, he was told that *Reuben* had sold the lot to *Thorne.* The witness saw *Thorne* pay money to *Reuben,* and all the other heirs received a share of the money; but the witness did not know whether they were present at the sale to *Thorne.*

A verdict was taken, by consent, for the plaintiff, subject to the opinion of the court on the above case.

*Wendell,* for the plaintiff, contended, 1. That the deed from *Reuben Van Gelder* to *Thorne,* passed only the share of *Reuben,* or *one ninth* part of the lot, or of the rights of his father as a soldier. The first section of the act* concerning the military lands, declares, that all lands patented to officers and soldiers, who have died previous to the 27th of *March,* 1783, to have been vested in them at the time of their deaths' respectively; and the 7th section provides that the act regulating *descents* shall apply to, and govern all cases provided for in the first section, except where the lands were on the 5th of *April,* 1803,

* 1 N. R. L. 353.

held by *bona fide* purchasers or devisees under any person who would have been heir at law of the patentee, if that provision had not been made. The children of *Jacob Van Gelder*, the patentee, took as tenants in common, and the lot was not held by *Jacob*, as the eldest son and heir at law of his father. Again; *Reuben* described himself as the administrator and heir of *Jacob*. As administrator he could have no right to convey. As heir of *Jacob*, (not being the eldest son) he could be entitled only to one ninth. The entry of *Thorne*, under the deed, was only as tenant in common, claiming one ninth; so there could be no adverse possession.

2. The deed from *Jacob*, *William*, and *Elijah*, to *Reuben*, of the 7th of *January*, 1792, was antedated and void. Nothing was seen or heard of this deed until nine years after its apparent date, when it was proved by *Stephen Thorne*; but that deed could enure to the use of the grantee only.

3. The prior registry of the deed to *William Preston*, would destroy the operation of that deed; for there is no evidence of a notice to *Preston* of its execution. Such notice must be direct and positive.*

Again; an adverse possession makes a conveyance by the person out of possession void as against third persons; and though such adverse possession may prevent the operation of the deed so as to enable a person to recover in the name of the grantee, yet, the title remains good in the grantor.† Outstanding titles may be purchased in, to support a title.‡

*E. Williams*, contra. The defendant and his father have enjoyed the premises, under a claim of title, for twenty years before bringing the action.

*Wendell.* The fact is, as will appear from the pleadings, though not stated in the case, that the suit was commenced six months before the statute could attach.

*Williams.* If the possession was adverse in 1798, at the time the deeds were given, under which the defendant claims, those deeds are void. Now, the fact is, that the defendant and his father were in possession in 1794, under the deed of *Thorne*, to whom *Reuben Van Gelder* had conveyed. There was, there-

*Margin notes:*

ALBANY,
August. 1816.

JACKSON
v.
SMITH,

* Jackson v. Given, 3 Johns. Rep. 137.

† Jackson v. Brinkerhoff 3 Johns Cases, 101. Williams v. Jackson, 5 Johns. Rep 489.
‡ Jackson v. Demont, 9 Johns. Rep. 55. Jackson v Wheeler, 10 Johns. Rep. 164.

fore, a legal incapacity in any person out of possession to convey the lot. No matter what was the character or extent of the conveyance from *Reuben Van Gelder* to *Thorne*, if the defendant purchased the fee of the whole lot, and held it as tenant in fee of the whole. He has continued in possession; the heirs of *Jacob* were not in a situation to make a legal conveyance ; *Reuben*, the grantor, claimed to be heir to his father, who died in 1779, when, by the law of the state, as it then existed, the oldest son took the whole estate as heir at law. The possession taken under this deed was a possession of the whole. The antedating of the deed of the 7th of *January*, 1792, if it were proved, would not be material here ; but there was no proof of the fact.

The prior registry of the plaintiff's deed can have no effect ; if it was void in its creation, it can gain no preference by a registry. Then the defendant shows that he has the title of the heir at law of the patentee, and continued possession under it.

Again ; the 7th section of the statute relative to military lands, as to the application of the statute of descents, excepts the case of *bona fide* purchaser holding on the 5th of *April*, 1803. Now, at that time, the father of the defendant was a *bona fide* purchaser in possession.

In *Jackson* v. *Demont*, it was held, that a release from the lessor, after issue joined, in an action of ejectment, will protect the defendant against the lessor ; and in *Jackson, ex dem. Bonnel & Goodyear,* v. *Foster*,[*] it was held that the plaintiff could not recover on the demise of a lessor, who had released his interest to the defendant.

* 12 *Johns. Rep.* 488. *Jackson, ex dem. Bonnel,* v. *Sharp,* 9 *Johns. Rep.* 163.

*Van Vechten,* in reply, contended, that the character of the possession of the defendant and his father, since 1794, must be in conformity to the title they then acquired ; and whatever may be the form of the deed from *Thorne*, if he could convey only an undivided ninth part, the conveyance must be construed, and take effect, according to the rights of the grantor. The grantor did not describe himself as heir at law, but only as administrator and heir. When a person having right enters into possession of land, the law intends that he entered according to his right. Then, he insisted, the character of the possession of the defendant was that of a tenant in common of one ninth part ; and so

could not be adverse to the other heirs, or the tenants in common of the remaining eight parts. It appears from the *Nisi Prius* record, that the process was returnable in *January*, 1812, so that the statute of limitations could not prevail. The court will go far to protect the rights of tenants in common from an ouster by an adverse possession under a co-tenant.*

Again, in *Jackson, ex dem. Potter*, v. *Hubbard,*† this court held, that under the act of the 8th of *January*, 1794, for the registry of deeds in the military tract, a prior deed not deposited in the clerk's office was void against a subsequent *bona fide* purchaser, whose deed had been deposited. The defendant was bound to take notice of the deed to *Preston;* whatever is sufficient to put a party on inquiry is good notice. Where a purchaser cannot make out a title but by a deed which leads him to another fact, he shall be presumed to know that fact.‡

Again; a sound construction of the act of 1803 decides the character of the possession. It provides for a compensation for improvements made by settlers *under colour of title*. The possession is to be transferred to the true owner, on making payment for the improvements. This shows that the legislature intended to protect the titles to lands under deceased soldiers, and, at the same time, to protect those who entered under colour of title; thus doing justice to all parties, and giving the land to its true owner.

YATES, J., delivered the opinion of the court. The important inquiry in this cause is, as to the character, duration, and effect of the defendant's possession; and it involves the following questions : 1st. Whether the premises have been held adversely for 20 years before suit brought ? and, 2d. If adverse, (although not for that period,) what the legal operation of such possession is, with regard to the conveyances introduced by both parties, as evidence of title ?

The deed of *September*, 1791, from *Reuben Van Gelder* to *Stephen Thorne*, for the whole lot, cannot control the possession of the defendant, and of his father, so as to make it the entry and possession of a tenant in common, merely because it gave title to no more than one ninth part of the lot.

The grantor in this deed states himself to be the heir of the patentee, and the conveyance is for the whole lot; and it may well be inferred, that *Thorne*, at the time, supposed that it gave

*ALBANY,*
*August, 1816.*

JACKSON
v.
SMITH.

* *Van Dyck* v. *Van Beuren & Vosburgh,* 1 *Caines' Rep.* 83.
† *Caines' Rep.* 83.

‡ 2 *Fonbl. Equ.* 155. 2 *Ch. Cas.* 246.

him title to that extent, and that he purchased accordingly. It afterwards appearing that *Reuben* was a younger son could not alter the nature of the defendant's possession. If *Reuben* had been the heir at law of *Jacob Van Gelder*, the soldier, *Thorne*, would have held the whole lot under the statute of the 5th of *April*, 1803, as a *bona fide* purchaser.

The conduct of *Reuben*, subsequently to the conveyance made by him, confirms, in a great degree, what has been stated to have been the intention of all the parties when it was executed. The consideration received was divided between all the children. They, therefore, supposed the sale made by *Reuben* sufficient to pass the entire lot, or they never would have accepted of their proportion of the consideration received for it; and *Thorne*, supposing himself to have obtained a good title, did not hesitate to dispose of it to a person who entered as owner of the whole lot.

If, therefore, it is conceded, that *Reuben's* deed conveyed one ninth part only to *Thorne*, and that if he had entered under it, such entry would have been according to his right as tenant in common, and that his co-tenants could not have been disseised, because the possession would not have been adverse to their rights; still, this cannot change the character of the defendant's possession, nor the previous possession of his father. Neither of them had any knowledge of this deed. The father purchased, by warranty deed, from *Thorne*, who represented himself to be the sole proprietor of the lot. As early as *July* or *August*, 1792, while the defendant's father was on the lot, *Thorne* went to view it, and avowed himself to be the owner, and sold it for 140*l.* From that period, in strictness, the adverse possession commenced. At all events, it commenced from the date of *Thorne's* deed to the elder *Smith*, which was in *February*, 1794. It is evident, therefore, that the doctrine, in relation to the possession of tenants in common, does not apply to this case. It might as well be urged as applicable to a conveyance made by a stranger, of any lands held in common. And it will not be questioned, that the possession of a purchaser under such a deed, given without right on the part of the grantor, would, notwithanding, be adverse to the rightful owners, although held by them in common. But, in the present case, no such tenancy did, in fact, exist. The patent had issued to a deceased soldier; and it may well be questioned, whether an equitable title, even,

ALBANY,
August, 1816.

JACKSON
v.
SMITH.

could pass to his children. The statute to regulate descents as to property, in that situation, was not passed until nine years subsequent to the sale made by *Thorne* to the father of the defendant; so that the possession taken by him must be deemed adverse to all the world. (*Jackson* v. *Wheeler,* 10 *Johns. Rep.* 166. *Jackson* v. *Foster,* 12 *Johns. Rep.* 490.)

It is not stated in the case at what time this suit was commenced, but the plaintiff's counsel, in the course of the argument, mentioned, that it appeared from the files in the clerk's office, that the declaration was returnable in *January term,* 1812. If that is so, the possession has not been adverse for a period sufficient to bar the plaintiff's right to recover on that ground; for, before *Thorne* went to view the lot, it is not pretended that *Smith* claimed it, or that he held it in the right of any one. He, doubtless, during that period, possessed it as a mere intruder; but the adverse possession, subsequent to *February,* 1794, when he had purchased it from *Thorne,* who then assumed to claim the whole lot, and having taken his warranty deed, was sufficient to defeat the conveyances obtained by *William Preston* in 1798. The conduct of *Thorne,* afterwards, could not alter the operation of this possession. There is no evidence that *Smith* had any knowledge of it; and such conduct may well be attributed to the interference of *Preston* with the title, because the lot had been conveyed by a warranty deed to the elder *Smith,* so that *Thorne* was interested in securing *Smith's* possession. The deeds, then, from *William Van Gelder, Jacob Van Gelder,* and *Elijah Van Gelder,* to *William Preston,* of the 15th of *March,* 1798, and of the other children to him, dated the preceding *February,* being rendered inoperative, the plaintiff, of course, cannot be benefited by the demises of *William Preston, John Matthews, Robert Morris,* and *Garrit Wendell,* and the conveyances, subsequently executed by all the children to *Reuben,* must enure to the benefit of the defendant, who held under *Reuben,* through *Thorne;* because the facts in the case sufficiently show, that those conveyances were obtained for the purpose of granting or securing *Thorne's* title under *Reuben;* and *Smith* being *Thorne's* grantee, he and those claiming under him, had a right to protect themselves under a title thus obtained, in the same manner, as though he had purchased from the children himself. It is an established rule of law that a party in possession claiming title, may purchase in an outstanding title. (*Jack-*

*son, ex dem. Humphrey, v. Givan,* 8 *Johns. Rep.* 139.   1 *Johns. Cases,* 81.   5 *Johns. Rep.* 489.   8 *Johns. Rep.* 479.   12 *Johns. Rep.* 207.)   There, therefore, can be no recovery on the demise of the other children of the patentee, as they have parted with their right in the premises to *Reuben,* which, as before stated, enures to the benefit of his grantee and those claiming under him.   The defendant is entitled to judgment.

VAN NESS, J., dissented.

Judgment for the defendant.