Johnson, Justice,
 

 delivered the opinion of the court. — The principles of law involved in this cause are few and simple, and well established ; and all the difficulties consist in so arranging the facts as to apply the principles correctly ; or rather to determine whether they have been correctly applied in the court below. The plaintiff here was plaintiff there, and the action being ejectment, a remedy rigidly legal, it behoved her to make out a title of the same character. The title made out by the plaintiff consisted :
 

 1. Of a series of documentary and other evidence, received without exception at the trial, which vested in Philip Schuyler an estate, which, to all legal intendment, was an absolute fee-simple in him and his heirs ; without trust or reservation, or any evidence, intrinsic or extrinsic, of his holding it, or any part of it, in a fiduciary capacity.
 

 2. John Bradstreet’s will, dated 23d of September 1774 ; in which he first devises all his estate to his two daughters, in common, in fee ; and then says,
 
 “
 
 notwithstanding the former devise for the benefit of my wife and daughters, I empower my executors to do all acts, and execute all instruments, which they may conceive tobe requisite to the partition of my landed
 

 ' estate ; and I devise the same to them as joint-tenants, to be by them sold, at such time, and in such manner, as they shall think most for the benefit of my daughters,” &c.
 

 3. The will of Martha, one of the daughters of John Bradstreet, under which Martha, the present plaintiff, acquires an interest of one-sixth in John Bradstreet’s estate, real and personal. Of this will, Sir Charles Gould is appointed sole executor, with power to sell the lands in America, and apply the proceeds to the use of the plaintiff.
 

 4. A deed from Philip Schuyler, dated May 16th, 1794, by which, reciting that he is executor of John Bradstreet, he conveys the plaintiff’s interest , in the subject in controversy, to * Agatha Evans, widow, the other ■* daughter of John Bradstreet, and Edward Goold, naming him attorney of Sir Charles Gould, in trust to sell and dispose of it, and apply it according to the interest created by the wills of John and Martha Bradstreet. This deed recites that Philip Schuyler was, at the time of making
 
 *277
 
 John Bradstreet’s will, and from thence to the decease of John Bradstreet, seised in fee, as tenant in common, of and in two equal undivided fourth parts of and in all that parcel or certain tract of land, &c. “ (being the same of which lot 97 is part and parcel), as to one equal undivided fourth part of which said tract of land the said Philip Schuyler was seised in trust for the said John Bradstreet.” This whole fourth part he conveys to Agatha Evans and Edward Goold, to the use of Agatha, as to two-thirds, in fee, and as to the remaining third, to the use of Edward Goold, in trust to sell and apply the proceeds as before stated. The above recital is the only evidence in the cause to show that the conveyance was anything but a mere bounty from Schuyler to these parties. And notwithstanding that recital, it is perfectly clear, that the case makes out the legal estate to have been in him ; that the conveyance is a common-law conveyance, and operates to convey a legal estate to Mrs. Evans and Goold : as to her two-thirds, clearly so ; and as to the remaining third, equally so, since the fee vested in Goold, and the interest of this plaintiff under that deed is a mere equity.
 

 5. That equity was not turned into a common-law right, until 1804, when Goold, who survived Agatha Evans, by a deed, in which he sets out all the facts on which this plaintiff’s equity rested, and among them his character of attorney to Sir Charles Gould, and in compliance with a decree of the court of equity, invests her with the legal estate.
 

 The defence set up is adverse possession in Potter; for the double purpose of avoiding Schuyler’s deed, and to maintain a bar under the statute. And to maintain this defence, a deed is introduced, executed four years prior -to that of Schuyler, by which Agatha Evans, in her own right, and Edward Goold and another, professing to be attorney to Sir Charles Gould, executor of Martha Bradstreet, the elder, convey the lot 97 to Stephen Potter, by words, calculated to vest a legal fee-simple, with a general warranty by Evans, and a special covenant against all claiming under John Bradstreet. But in the actual Estate of the title at that time, in the eye of the common law, this deed conveyed nothing ; there was no seisin, actual or •- constructive ; no legal right to possession ; nor any remedy except in equity for acquiring a legal estate to the parties who executed this deed. The bill of exceptions shows, that the evidence proved in substance, that under this deed, and immediately after its execution, Potter entered ; and from that time, he, and those claiming under him, have held it as sole and exclusive owners against all the world.
 

 It is not questioned, that the plaintiff is, within the saving of the statute, under a continuing disability, unless the statute began to run as against Schuyler, and with equal reason, as against Evans and Goold, Schuyler’s grantees, in which case, it continued to run, so as to bar her.
 

 On this state of facts, the parties below moved for instructions, and the court gave a charge, and the verdict was rendered for the defendant. The questions which the court has to consider are : 1. Whether the plaintiff was entitled to the instruction she prayed ? 2. Whether there was any error in the instruction as given ? The prayer was a general one, that on the case made out, after the whole evidence and argument were gone through, she was entitled to a verdict. This, of course, implies, that she had made out a good title ; and that the defendant had made out no better title or bar. The words of the prayer are, that the matters and things so given in evi
 
 *278
 
 dence were conclusive to entitle her to a verdict. From which it follows, that if there were a flaw in her title, or that the facts made out a better title in the defendant, or a ba.r to the action, under the statute, the plaintiff was not entitled to this instruction. The charge admits the validity of the plaintiff’s deduction of title, unless interrupted by the invalidity of Schuyler’s deed, resulting from an adverse possession in Potter ; in which case, Edward Goold took nothing, and could transmit nothing to her, by his conveyance in 1804. The defendant’s case, the court puts upon the possession under the statute alone. Now, although the court may have overlooked something in the cause, yet if the consequence is, that the charge is more favorable to . *the plaintiff than it should have been, that is no ground of complaint J on her part. And, individually, I think, there were some very important views of the case overlooked ; views on which I doubt if Lord Coke would have hesitated a moment, to decide the better title to be in Potter, independent of the bar.
 

 1. Then, I care not, for the purposes of my argument, whether the deed of 1790 to Potter, be regarded as the sole deed of Agatha Evans and her husband, or their joint deed, with Edward Goold and Ludlow, attorneys to Sir Charles Gould, or of Sir Charles Gould, executed by his attorneys ; either view leads to the same result. But the correct legal view leads more immediately to it; which is, that whether from the absence of proof of the power of attorney, or from any incapacity to delegate his authority, Sir Charles Gould’s name must be stricken from the deed. It is the deed of Agatha Evans and husband, conveying, in language the most full and unequivocal, the whole land, and the whole fee in the land. There is not a word in it, that can give it the character of a conveyance in severalty, each conveying a distinct interest. And more emphatically so as to Evans, who warrants the whole, and covenants expressly against the plaintiff’s title.
 

 This, then, is, as to the plaintiff’s interest, a conveyance by one having no title, to a third person, who enters under that conveyance. The fact of Potter’s possession is distinctly affirmed ; and whether by actual forcible ouster, or by a peaceable possession acquired by fraud ; the law holds him to be a disseisor. The first alternative makes him so in terms; and the second is an old, but well-settled doctrine. Such is the case in Rolle’s Abridgement, of a husband and wife, joint-tenants in fee; the husband commits treason, and the king seizes the land ; the king cannot be a disseisor, but the lord of whom it was held, upon a false suggestion that it is his proper escheat, is put in possession by the king ; the lord is adjudged a disseisor as to the joint-tenancy of the wife ; and the reason assigned is,
 
 “
 
 that he got possession of the freehold by misrepresentation, by injustice, and falsehood ; that therefore, the possession acquired by it must be looked upon as a possession acquired by violence open and avowed.” 1 Roll. Abr. 658. So, where a guardian in chivalry, having, of course, the possession in ■*4.34.1 assigns dower to one, as wife of the deceased *tenant, who is -* not wife, and she enters; she is a disseisress : and the reason assigned is, that “her possession being acquired by an act of fraud and injustice, the possession acquired by it is tortious.” Bro. tit. Disseisin, 7 ; 1 Roll. Abr. 662. So also, of a possession delivered or permitted under void titles ; as, in the case of two infants, joint-tenants, and one, being under age, releases to the othex-, by which the other holds the whole ; he is a disseisor,
 
 *279
 
 and the reason assigned is, “ that the title is utterly void.” He was not held to be in of the original estate, although a joint-tenant, hut to have committed a disseisin, against the clear state of positive fact, being considered as entering according to the release ; not according to the state of actual title after the release was executed, which being void, left the title unaltered. Bro. tit. Disseisin, 19. And the same law was ruled in another case of much the same nature, against the notoriety of an actual feoffment; where the invalidity of the title was combined with a breach of duty, as between guardian and ward. It is also laid down, that if A. executes to B., a lease for the lands of C., and B. enters, this is a disseisin by A., and the reason assigned is, that the demise to B. is equivalent to a command to enter the land of C. Bro. tit. Disseisin,
 
 7
 
 ; 1 Roll. Abr. 662.
 

 At the date of the deed to Potter, the legal title was in Schuyler, and he only could be legally disseised. It is not necessary to recur to authority, to prove that a release to the disseisor, by the disseisee in fee, is as good a conveyance as can be executed ; or that an absolute conveyance in fee, especially, with words of release, to a disseisor, is a release to the disseisor, or to his feoffee. This last principle is expressly ruled in the case of
 
 Jackson
 
 v.
 
 Smith,
 
 decided in New York courts. 13 Johns. 406.
 

 Here, then, we have a conveyance from Schuyler, the disseisee, to Agatha Evans, the disseisress, operating in favor of Potter, her grantee ; which makes out a common-law conveyance. It is seldom that a case, in our times, savors so much of the black letter ; but the course of decisions in New York renders it unavoidable, and the whole course of this argument has been calculated to involve us in it.
 

 If the conveyance of 1790 to Potter could admit of being *consid- ... ered as only purporting to convey severally the interest of the parties L grantors ; still, we are led to the same result. It must, in that view, be considered as the several conveyance of Sir Charles Gould, by Edward Goold and Ludlow, his attorneys. But then it is in the same character, reciting himself such in his indenture, which he is estopped from contradicting, that he receives the conveyance from Schuyler. From this two consequences follow : 1st. That he receives the release from Schuyler in the same right and character in which he conveyed to Potter ; and therefore, in point of right, as well as form, is the grantee of plaintiff’s interest to Potter, and as such, the release of Schuyler to him is a release to Potter. 2d. That as it is through him that Mrs. Bradstreet makes title, and his deed contains the same recital, exhibiting him in the character of attorney to Sir Charles Gould, she also is estopped from denying him in that character. In this view also, then, Potter would hold a good estate at common law.
 

 It may be objected, that if Schuyler was disseised, so as to invalidate his deed, as to the title of the plaintiff, then he was disseised so as to invalidate the deed to the disseisor. But this is not the law ; for the principle does not operate as between the disseisor and the disseisee, but only as between the disseisee and a stranger. So is the common law ; and so is the New York decision before alluded to, in express terms.
 
 Jackson
 
 v.
 
 Smith,
 
 13 Johns. 406. Besides, if void against her, it is immaterial, whether void, or not, against the defendant; her title, then, breaks off midway. Thus far for my individual views.
 

 It is objected to the charge, as it regards the plaintiff’s title, that it was incorrect, in stating “that the effect of an adverse possession in Potter, at
 
 *280
 
 the time of the execution of Schuyler’s deed to Evans and Goold, would be to render the deed inoperative and void, and prevent any title from passing under it to Evans and Goold.” If the judge could be considered as having passed upon the sufficiency of the evidence to establish the adverse possession, there might be just grounds of complaint found to this charge ; but that question he expressly leaves to the jury ; and then, it is obvious, that if such be the law of New York, it is idle to go further, and inquire whether . disseisin and adverse possession i:be convertible terms at common law; J or whether either, at this day, should invalidate a transfer of property. That an actual or constructive possession is necessary, at common law, to a transmission of right, is incontrovertible. It is seen in the English doctrine of the necessity of an heir’s entering, in order to transmit to his heirs ; but whatever be the English doctrine and that of other states, as to the right of election to stand disseised or not; it is certain, that the New York courts have denied that right, both as to devises and common-law conveyances, without the aid of a statute repealing the common law. After the case of
 
 Jackson
 
 v.
 
 Demont,
 
 9 Johns. 55, it is in vain to contest the point ; and the principle is established by various other cases. It was then incontrovertible, in that state, that if the jury found an adverse possession (for such is the language of the New York cases ; not actual ouster or disseisin), the conveyance was void : and such was the charge of the judge.
 

 It seems to have been supposed, in the argument, that the judge founded his instructions on this point upon the statutes of maintenance. This, however, is not the fact; for it will be seen in the case of
 
 Jackson
 
 v.
 
 Demont,
 
 that the courts of that state go upon a principle having no relation whatever to the statute of maintenance. They apply to adverse possession the common-law doctrine on the effect of disseisin ; according to which, the deed of one disseised of his freehold, is held to be utterly void. His freehold was then held to h? out of him, to be converted into a right of entry or right of action, and as such, no more the subject of legal transfer at common law, than an ordinary
 
 chose in action.
 
 It being so settled in New York, it is in vain to inquire further ; but,
 
 en passant,
 
 it may be observed, that there are few principles of more ancient or more dignified origin. It is the law of kings, that the fact of possession proves the right of possession ; and the idea is thrown out by Blackstone, that it probably passed down from greater to less, until it extended to every man’s close. There are, however, less questionable reasons for it, to be found in the practice and policy of the feudal and common law.
 

 But the charge is said to be erroneous in those passages which relate to the bar of the statute. There is something unique in the form of this bill of *4.s'7'l exoePti°ns) since, after setting out the facts, it gives us the *arguments -* of counsel, instead of prayers for specific instructions ; and contains but one prayer on each side, each for a general instruction in the party’s favor. So that we have to examine this instruction, as rendered, and reduce it, from generals, into particulars, by reference to the evidence; perhaps, aided by the specific ¡propositions exhibited by the arguments.
 

 The instruction, then, commences by admitting, hypothetically, that the deduction of title to the plaintiff was complete ; and that the deed from Agatha Evans, and Ludlow and Goold, to Potter, was void, as to conveying away the interest of the plaintiffs ; “ yet,” the judge affirms, “ there is
 
 *281
 
 nothing appearing on the face of this deed
 
 (i. e.,
 
 the deed to Potter), nor anything in the circumstances connected with its execution, so far as they had been shown, which in law would preclude the defendant from availing himself of possession'under it, as a bar to the plaintiff’s action, or prevent the possession of the said Stephen Potter, taken under and in virtue of the said deed, from being considered adverse to the title' of the lessor of the plaintiff, and to the title of the said Philip Schuyler, the executor and trustee of the said John Bradstreet; provided the proof was sufficient in other respects to establish the fact of such adverse possession.” And again, “ that although it was generally true, that one tenant in common was not permitted to set up his possession, as adverse to his co-tenant, yet that one entering into possession of land, under a deed for the whole, and claiming the entire interest, would not be thus precluded ; although it should subsequently appear, that such deed conveyed an undivided share.” It then goes on to state, that the judge, “ after explaining to the jury, what in law constitutes an adverse possession, and submitting to them, as a question of fact, whether such a possession had been proved, directed them,” &c. And finally, the judge instructed the jury, that “the question, whether or not it was competent for the defendant to set up the defence of adverse possession, under the deed to Stephen Potter, was a question of law, and had been decided against the plaintiff ; that what in law constitutes an adverse possession was also a question of law ; and that it was for the jury to say, under the instructions that had already been given to them upon that point, whether such possession had been proved that if they believed from the evidence, that *such a possession had been established, they were bound to find a verdict in favor of the defendant.” >-
 

 Some difficulties were presented in the argument, as to the effect to he given to the words “ after explaining to the jury what in law constitutes an adverse possession But it must always be recollected, that this court can only reverse a judgment when it is shown that the court below has erred. It cannot, then, proceed upon conjecture, as to what the court below may have laid down for law ; it must be shown, in order to be judged, what instructions were in fact given, and what were refused. The passage alluded to can only be held to affirm what it expresses, to wit, “ that the judge instructed the jury as to what in law constitutes an adverse possession.” And in doing so, certainly there was no error — adverse possession is a legal idea, admits of a legal definition, of legal distinctions ; and is, therefore, correctly laid down to be a question of law. The whole argument in this case proves it.
 

 The whole purport of this part of the charge then, reduced to its elements with reference to the points in argument, is this : 1. That adverse possession is a question of law, on which the court has a right to instruct the jury. 2. That the fact of adverse possession, in its legal sense, was a question for the jury. 8. That the defendant in this case was not precluded from setting up an adverse possession ; whether we regard him in the character of one holding under a void deed, or of a trustee, or
 
 eestui qui trust,
 
 or of a tenant in common, or of one holding the same, or by the same title. Or, in more unequivocal terms, that an adverse possession, where it actually exists, may be set up. against any title whatsoever ; either to make out a title under
 
 *282
 
 the act of limitations, or to show the nullity of a conveyance executed by one out of possession.
 

 On the first two of these propositions there can be no doubt, and none has been expressed ; and as to the third, it is equally clear, that desseisin or adverse possession, as a fact, is always a possible thing,- and may occur wherever force may be applied. The common law, generally speaking, regards it as an act of force, and always as a tortious act; and yet out of regard to having a tenant to the
 
 praecipe
 
 and one promptly to do service *439] to the lord, ^attaches to it a variety of legal rights and incidents. Rights accruing under acts of limitations are recognised, in terms, as
 
 primé facie
 
 originating in wrong, although really among the best protections of right; and if any one who can commit a disseisin may claim under an adverse possession, it is not- easy to preclude any one. An infant, a
 
 feme covert,
 
 a joint tenant in common, a guardian, and even one getting possession by fraud, may be a disseisor. 1 Roll. Abr. 658, 662 ; Bro. tit. Disseisor
 
 7
 
 ; Salkeld, Joint Tenant and Tenant in Common. The whole of this doctrine is summed up in very few words as laid down by Lord Coke (1 Inst. 153) and recognised in terms in the case of
 
 Blunden
 
 v.
 
 Baugh,
 
 Cro. Car. 302, in which it underwent very great consideration. Lord Coke says, “a desseisin is when one enters, intending to usurp the possession, and to oust another of his freehold ; and therefore,
 
 qucerendum est djudice quo animo hoc fecerit,
 
 why he entered and intruded.” So, the whole inquiry is reduced to the fact of entering, and the intention to usurp possession. These are the elements of actual disseisin ; and yet we have seen, that one may become a disseisor, though entering peaceably under a void deed, or a void feoffment, or by fraud ; and that the intention to desseise may, under circumstances, be imputed to those who, by a general rule of law, are, in ordinary cases, incapable of willing, or not bound by an exercise of the will. This analogy has been freely extended to adverse possession, and even gone beyond it, as well by the decisions of New York, as will hereafter appear, as by the repeated ruling of this court. In the case of
 
 Pawlet
 
 v.
 
 Clarke,
 
 4 Pet. 504, it is distinctly intimated, that a possession may be adverse, wherever an ouster may be presumed : and also unanimously ruled, that it may be adverse, and maintain a bar under the statute, even where ouster is in terms repelled, and not to be presumed from the very circumstances of the case. The words of the court are, “ a vendee in fee derives his title from the vendor ; but his title, though derivative, is adverse to that of the vendor ; he enters and holds possession for himself, and not for the vendor ; such was the doctrine of this court in
 
 Blights Lessee
 
 v.
 
 Rochester, 7
 
 Wheat. *4.401 53®-” ^ be the correct doctrine of this *court, and there can be J no doubt it is, it seems to follow, that wherever the proof is, that one in possession holds for himself, to the exclusion of all others, the possession so held must be adverse to all others ; whatever relation, in point of interest or privity, he may stand in to others. Such certainly is the view taken of the law, in the reasoning of this court, in the case of
 
 Willison
 
 v.
 
 Watkins,
 
 3 Pet. 53 ; and with express reference to lessors, mortgagors, trustees and tenants in common. In the ease of
 
 McClung
 
 v.
 
 Ross,
 
 the chief justice says, “ that one tenant in common may oust his co-tenant, and hold in severalty, is not to be questioned. But a silent possession, accompanied with no act that can amount to an ouster, or give notice to his co-tenant that his pos
 
 *283
 
 session is adverse, ought not, we think, to be construed into an adverse possession ; the principles laid down in
 
 Barr
 
 v.
 
 Gratz,
 
 4 Wheat. 213, apply to this case.” This is perfectly consistent with the language of the case of; the
 
 Town of Pawlet;
 
 for the fact tobe determined is, whether the party 1 holds possession for himself or for another ; and this can only be determined by evidence, or circumstances to prove the one or the other. It is the inquiry into the “
 
 quo animo."
 
 In all these cases, there is no intimation found, that the adverse possession may not be set up ; the only point maintained is, that the “
 
 quo animo "
 
 must be established, as well as the fact. But in finding the
 
 quo animo,
 
 the jury must, of course, be left to their own view of the effect and sufficiency of the evidence. Actual ouster is clearly not requisite, either to be presumed or proved ; adverse possession may exist without it; and notice, as a fact, may clearly be deduced from circumstances, as well as be positively proved.
 
 a
 

 The bill of exceptions states, that the defendant proved (that is the word used) that Potter: 1. Entered under his deed, and by virtue thereof : 2. Immediately after the execution thereof : 3. Claiming to be sole and exclusive owner thereof ; and in a subsequent part, it is amplified by the expressions, claiming the absolute ownership, and the ownership in fee. Much of the discussion has turned upon the sufficiency of proof to the effect stated, to sustain the finding of an adverse possession ; and it has been insisted, that it neither supplies the exigency of actual ouster or notice: The only prayer of the plaintiff, it will be recollected, is for a general instruction in *her r¡¡¡ . favor, “ upon the matters so produced and given in evidence in her *-
 

 [1]
 

 behalf.” The court were, therefore, not called upon by the plaintiff to instruct the jury, upon the competency of this evidence, to sustain a finding of adverse possession ; and accordingly gave none, unless it was incidentally ; and if, therefore, the evidence was insufficient, it could only be the ground of a motion for a new trial; with which we have no concern.
 

 The views which I have taken of the doctrine of adverse possession would not have been necessary, but for the supposed bearing of the instructions actually given by the court upon the verdict; and particularly in relation — 1st. To that part of the bill of exceptions, in which it is said, “ that the court explained to the jury what in law constitutes an adverse possession ;” which, if correctly explained, it is supposed, could not have sanetioned the verdict upon that evidence. But on this, it must be observed, that in a case, where the
 
 quo animo
 
 alone, with which a defendant entered, and held, was the question
 
 ;
 
 and the proof was, that he entered and held to be the sole and exclusive owner of the land, and to hold an absolute ownership in fee; if ouster and notice, like other facts, may be presumed from long and undisturbed possession, or other circumstances, it would be difficult to say, that the testimony in this cause was not competent to sustain a finding of an adverse possession. It is impossible, upon this view of the case, to impute to the court any other instruction than what may be covered by the terms of the proof in the case ; that is, that if the judge instructed the jury, “ that one who enters under a deed purporting to convey to him an estate in fee, claiming to be sole and exclusive, and absolute owner in fee thereof, for forty years, may be regarded as holding adverse to all the world it would be difficult to find any legal exception to such a charge; since it is left open to the jury to judge of the sufficiency of the evidence to prove the fact
 
 *284
 
 of a claiming to be sole and exclusive, and absolute owner, in fee. Notice and actual ouster are among the most direct, and ordinary proofs of such a holding ; and may have been the proved or presumed ground of this verdict.
 

 These views taken of the law of adverse possession were necessary to precede an analysis of the general ^instruction given by the court *442] upon the competency of the bar under the statute. On this instruction, it is necessary to bear in mind, that it is strictly confined to this : 1st. That there is nothing on the face of the deed under which Potter claims, that precludes him from setting up this bar. 2d. That there was nothing in the circumstances connected with its execution, that would preclude him. 3d. That there is nothing in the possession acquired under that deed, to prevent the possession acquired under it from being held adverse to the' lessor of the plaintiff, or to Schuyler ; provided, the proof was sufficient in other respects to establish the fact of adverse possession. There is no affirmation by the court of the sufficiency of that deed to constitute an adverse possession ; or of the sufficiency of the possession acquired under it. But all the court becomes responsible for is, the negative proposition, that there is nothing in the deed, or in the circumstances attending its execution, which precludes the defendant from setting up and proving adverse possession.
 

 Now, it is difficult to see how this proposition can be controverted. If, in the very nature of things, there is no one who may not be actually ousted and actually held out of possession, whether lessor, mortgagor, trustee or tenant in common, as is affirmed in the case of
 
 Willison
 
 v. Watkins, and other cases ; how is it possible, that any deed, or any circumstance, should preclude a resort to proof of absolute adverse possession, where it exists in fact ? The charge of the court amounts to no more than a limited affirmance of that general proposition.
 

 But as the chief difficulty in the cause arises out of that specification under the general proposition which relates particularly to a tenancy in common, we will consider that with due attention. The instruction of the court is, “ that although it is generally true, that one tenant in common was not permitted to set up his possession, as adverse to the title of his co-tenant; yet that one entering into possession of land, under such a deed for the whole, and claiming the entire interest, would not be thus precluded; although it should subsequently appear, that such deed conveyed only an undivided share.” The words
 
 “
 
 thus precluded ” have reference to the same *443] •*terms used in the general instruction, and make this part of it to mean, “ that one tenant in common entering into possession of land under a deed for the whole, and claiming the entire interest, would not be precluded from setting up an adverse possession ; provided, the proof was sufficient in other respects to establish the fact of such adverse possession.” And where is the objection to such an instruction ? If one tenant in common may be disseised by another ; if one tenant in common may set up an adverse possession against his co-tenant, provided he has adequate proof of the fact of its adversary character; it would seem, that this instruction imports no more.
 

 On this part of the case, however, there exists a division of opinion on the construction of the charge : three of the judges thinking that it falls short of the proposition as I have stated it; and two others concurring in my
 
 *285
 
 view of its construction. In support of the construction, which those who concur with me adopt, I have further to remark :
 

 1. That the court below might very well have withheld this instruction, since, in fact, there is no legal tenancy in common in the case. The action of ejectment deals altogether with legal estates. Mere equities are unknown to it; and yet the tenancy in common set up in this case is altogether destitute of a legal character. At no time, had the plaintiff’s lessor a
 
 scintilla
 
 of right, known to the common law, until she received the deed of 1804. Until that time, the only estate that can be recognised in this form of action was in Schuyler, or in Evans and
 
 Goold;
 
 if not in the defendant
 
 Potter,
 
 as has before been noticed. It surely cannot be contended, that Potter held as tenant in common with Goold, since Goold, either in his own right, as assuming a false character, or in the right of Sir Charles Gould, as having acted in his true one, was one of the grantors under whom, and against whom, Potter entered.
 

 2. There was no tenancy in common, because Potter entered in fact in his own right, under a deed conveying a fee-simple in the entirety. Such it is, as to the act of Evans and wife, and such it purports to be, as to the act of Edward Goold, or of Sir Charles Gould. It has been earnestly insisted, that the entry of Potter under that deed must be presumed to be according to the title actually acquired under it, supposing it *to be void as to r¡!! Sir Charles Gould ; and not according to the estate which it purports *• to convey. But to this there are several answers, and the first alone is conclusive ; to wit, that the evidence expressly repels the presumption. He entered under that deed, as the sole, exclusive, absolute owner in fee ; this is altogether inconsistent with an entry to the use of himself and another. And this seems to be no longer an open question in New York, even on the subject of legal inference. For in the case of
 
 Jackson
 
 v.
 
 Smith,
 
 which was the case where one tenant in common conveyed the whole, and this very point was made ; the court repels the inference in favor of the entry as tenant in common, and declares tire contrary to be the proper inference. And in the case of
 
 Clapp
 
 v.
 
 Bromagham,
 
 9 Cow. 551-3, which was another case of a conveyance of the whole, by one tenant in common, the same doctrine is repeated in terms. That part of this bill of exceptions which relates to the proof, seems to have been nearly copied from the case of
 
 Clapp
 
 v.
 
 Bromagham;
 
 in which the bill of exceptions stated, that the defendant entered as purchaser of the whole, and held as tenant in severalty, claiming to be sole and exclusive owner. Again, although it were the true inference of law, nothing can be clearer, than that it might be repelled by proof, and that the jury might v7ell find the contrary to be the fact; their verdict in this case is equivalent to such a finding; and for aught that we can judicially know, such a finding may have been sustained by proof of ouster, notice, forcible repulsion, leasing and receiving rents ; or any other competent proof of the character of his entry, and the assertion of rights under it.
 

 3. If there was a tenancy in common, the law appears to be definitively settled in New York, that the grantee of one tenant in common for the whole, entering on such conveyance, and holding-as sole owner, may set up the statute against his co-tenants in common. And to this effect we have before us an adjudged case, in which there seems to have been neither an actual ouster, nor actual nor constructive notice to the co-tenants. This is
 
 *286
 
 the case of
 
 Clapp
 
 v.
 
 Bromagham,
 
 decided in 1827, and before referred to, for another purpose ; in which one of nine tenants in common sold the whole premises to the defendant, who entered and held as his sole and exclusive *445] '‘'property. It is distinctly shown by the court, that the only question in that case was, whether the defendant might set up his possession, to the exclusion of his co-tenants ; and decided, that he might, upon the most elaborate argument and profound examination. In that case, the decision of this court in the ease of
 
 Ricard
 
 v.
 
 Williams,
 
 is cited, 7 Wheat. 60, and recognised as laying down the true principle by which this class of cases must be governed
 
 ;
 
 to wit, that in the absence of all controlling circumstances to the contrary, the entry of one having right shall be held to be according to that right; that an ouster or disseisin is not to be presumed from the mere fact of sole possession ; but that
 
 “
 
 it may be proved by such possession,” accompanied by a notorious claim of an exclusive right. This decision, according to our view of it, leaves no scope for speculation.
 

 4. On the subject of this equitable tenancy in common, against which we must again enter our protest as a
 
 novus hospes
 
 in the action of ejectment, it may be further remarked, that if it is to be regarded in our deliberations on the law of the case, it is to be presumed, that it must be treated as if we were sitting in a court of equity ; and then it would certainly be appropriate to examine it in all its equitable aspects. And first, is the deed to Potter to be regarded as the deed of Sir Challes Gould, or is it not ? If not, then, clearly, Potter is not to be affected by any equity which Mrs. Bradstreet might set up against Sir Charles Gould. .If it is to be considered his deed, then other equitable considerations present themselves. It is his deed, executed by his attorney, Edward Goold. But Mrs. Bradstreet also makes title through Edward Goold ; naming himself attorney to Sir Charles Gould, and reciting that as his character in conveying to her. Then, if Potter is to be affected with equitable notice, or equitable duties, as being his substitute ; why is not Mrs. Bradstreet to be similarly affected, in the character of his alienee or substitute ? If so, she is bound to do whatever Potter might in equity have claimed of Edward Goold ; and that is, a conveyance in fee, in severalty, of the land in question. But I repeat, this is involving the action of ejectment in subtleties that are unknown to it.
 

 *ñ- ^ *s insisted} that though the point of tenancy in common be gotten over, there are others in the case that are to be removed : and 1st. That as there is no proof of the power from Sir Charles Gould to Ludlow and Goold, the deed to Potter places him, as to the interest of Mrs. Bradstreet, in the relation of one having no title, or a void title. ■ As to an entry under a void title, that has met with such pointed answers from this court, and the courts of New York, that it can scarcely require a labored examination. The bar of the statute is acknowledged to originate in wrong. In the case of
 
 La Fromboise, 8
 
 Cow. 594, 596, the supreme court of New York say “ that if a party have a deed, he need not produce it; and if, on production, it proves defective, that does not affect the character of the possession.” And when the court of errors come to examine that doctrine, they affirm it in more general and emphatic language. The only case which suggests a doubt as to its applicability, is that of
 
 Jackson
 
 v.
 
 Waters,
 
 12 Johns. 865, decided in the same courts. But though that cage be not shaken by subsequent decisions, it is enough to observe of it, that it had
 
 *287
 
 its origin in a peculiar policy, or rather in the common-law principle that the king cannot be disseised, or be a disseisor. It was the case of a Canadian grant, conflicting with a New York grant: and the case of
 
 Clapp
 
 v.
 
 Bromagham,
 
 as well as other adjudged cases show, that as between parties to mesne conveyances, the principle ceases to apply. Thus, though the king cannot be a disseisor, his grantee shall be held such ; and the reason given is, “ because he has time and leisure to inquire into the legality of his title which the king is supposed to want leisure for.” Bro. tit. Disseisin, 65.
 

 6. It is further urged, that the bar is set up against the same title, and therefore, incompetent. But this reason has been repeatedly disposed of by this court, and most recently in the ease of the
 
 Town of Pawlet,
 
 in which it is ruled, that it is no objection to setting up a possession as adverse. The passage has been already in part quoted.
 

 7. That the deed of 1790 places Potter either in the relation of Sir Charles Gould, who was trustee to Mrs. Bradstreet, or of Mrs. Bradstreet, who was
 
 cestui qui trust.
 
 But this admits of two answers — either the deed as to her was void, or it *was not. If not, it destroys her interest by an effectual transfer to Potter ; and if it was void, then it could not L create the relation contended for. If the confirmation through the deed of Schuyler is resorted to, then the answer is still more complete ; for that deed expressly recognises the right to sell ; and if it does put Potter upon inquiry, the result is, that he might fairly and honestly acquire a complete title by sale, discharged of her equity, since either Schuyler or Gould might sell, consistently with the trust. So that he may have taken a void title from one or the other ; but the integrity of his conduct in taking it is such, that no principle of equity can make him either trustee or
 
 cestui qui trust,
 
 under either the original or confirmatory deed. He may have been ill advised, in a legal point of view, in taking the one or the other title ; but if there is no immoral act on his pa.it, merely taking a void deed will not make him a trustee ; nor taking an effectual deed from one who has no power to sell, and is expressly charged to sell for the benefit of plaintiff. He is not to be affected by the fraud of the trustee, when he so clearly appears to have acted innocently, and in good faith. If, in taking a title of the whole, from Evans and wife, he has, in fact, taken a void title from them for Mrs. Bradstreet’s interest, he has a right to put himself upon his wrong; and if he has proved an actual adverse possession under it, he has a right to the benefit of his bar. The Evanses never were trustees to Mrs. Bradstreet, either under any of the wills, or under Schuyler’s deed. Edward Goold alone was the trustee for her under the latter ; legally, in his own right; equitably, as attorney to Sir Charles Gould. No fiduciary relation, therefore, is imputable to Potter, as claiming under the Evanses ; because they themselves were never affected with the character of trustees : and not through Goold, because his deed, if good, was absolute against the plaintiff, and if bad, conveyed nothing to Potter. If the attempt is to impute to Potter the relation of trustee, because Schuyler was trustee, and he claims through or under Schuyler ; the answer is, that if his paper title, as it is termed, is the subject to be considered, then he claims from Schuyler, through Evans and Goold ; and as Goold had the legal estate in him, so must Potter have ; and Mrs. Bradstreet must seek *her redress in equity. Against Goold, at law, r>)., ' she certainly could not recover. But even in equity, how would her *-
 
 *288
 
 right stand ? A sale by Goold was perfectly consistent with the trust for her benefit ; and considering the
 
 bond fide
 
 character of Potter’s purchase, I can see no ground for granting her relief as against him. Notice of her equity, without fraud or collusion, can afford none ; since notice of the right in her trustee to sell, must accompany it, or rather is a part of it. If the subject of inquiry, as it relates to Schuyler, is respecting the maintenance of Potter’s bar, then he need not assert his possession as adverse to Schuyler ; it is enough for his purpose, if adverse to Evans, or Evans and Goold j and that it might well be so held, although he claims under them, has been, as we have seen, distinctly and repeatedly laid down in this court. If it began to run against them, it continued for the necessary length of time. That one may hold adversely to him from whom he purchases, has long been settled both in this court and in the courts of the states of the United States ; the fact of possession and the
 
 quo animo,
 
 being still the legal subjects of inquiry.
 

 8. It has been argued, that whatever may be the rule, in ordinary cases, in this, the proof of notice was indispensable ; since these lands were wild or waste lands, notoriously uninhabited ; and mere possession of which was not enough to put the trustee or co-tenants upon their remedy. To this it may be answered, that for anything appearing in the bill of exceptions, the lands may not have been waste or wild ; and the proof of Potter’s entering immediately, and claiming to be sole and exclusive owner, would seem to repel the fact. But the true answer is the general one, which was before given on the subject of notice, that we know not, but proof of notice, or presumption of notice, may have been the grounds on which the jury found their verdict. As a proof of a “claiming to be sole and exclusive owner,” it was an adequate and natural ground; and certainly, as a fact, may have been inferred from length of possession, and other circumstantial evidence, of the weight of which they must be the judges.
 

 Judgment affirmed, with costs.