## JONES *against* PORTER.

An original deed which was proved in pursuance of the recording act, may be read in evidence, although such probate be made after suit brought.

A possession of land for twenty-one years may be adverse and hostile, and such as, under which a man may protect himself by the statute of limitations, although he did not know that any other person claimed the land.

Whether a defendant in ejectment obtained the possession of land by the consent of and under the plaintiff, is a fact for the determination of the jury; if the possession was thus obtained, the statute of limitations will not protect the defendant.

Error to *Westmoreland* county.

In this action of ejectment, *John Porter*, *William Russel* and *Mary* his wife, and *Robert Shannon* and *Elizabeth* his wife were plaintiffs, and *Robert Jones* and *C. Groves* were defendants.

The only questions of law which arose and were argued in this court were, whether a deed which had been proved by a subscribing witness, after suit brought, and without notice to the adverse party, could be given in evidence without further proof? And, under the facts which are fully stated in the opinion of his Honor,

(Jones *v.* Porter.)

who delivered that of the court, whether the statute of limitations was a bar to the plaintiff's recovery? The court below, (*Young*, President) sustained the evidence, and instructed the jury that the statute was not a bar.

*Armstrong* and *J. B. Alexander*, for plaintiffs in error.

*J. Findlay* and *Burk*, for defendant in error.

The opinion of the court was delivered by

Huston, J.—This was an ejectment for a tract of two hundred and eighty-six acres of land in *Allegheny* township, *Westmoreland* county. The plaintiffs shewed a patent to *Charles Porter*, that he died intestate, and that the plaintiffs and one *Robert E. Porter*, now dead, were his heirs. *Shannon* shewed a conveyance from *Robert*, dated in 1814, to himself for his share of this tract. This conveyance or rather agreement to convey, was executed in presence of *Robert Cochran* and *John Porter*, and was proved by *John Porter* on 29th September 1830 in *Montgomery* county, and since recorded. When the original deed was offered, it was objected to "for want of identity of the parties, and because the execution of the paper was proved after the commencement of this suit, without notice to the defendants." The paper was admitted. The phrase "for want of identity, of the parties," was supposed in the agreement to mean, either that the *John Porter* who proved the paper was not the same man who signed it as a witness, or it was alleged he might be the *John Porter* who is the plaintiff in the cause—he swears he is the same man, and the fact that his hand-writing was somewhat improved since 1814, if any presumption at all against his truth, was not sufficient to avoid the probate; at least it was not sufficient to prevent it from going to the jury.

There was no proof that the plaintiff and the witness are the same person; and *Stephen Porter*, an uncle of plaintiff, proved their pedigree in the same county on the same day, before the same justice; it was then as probable that a son of his was the witness to the instrument, as that the plaintiff was. To reject proof, the court must know that the witness is interested. But *John Porter* the plaintiff was a legal witness to prove a deed to his brother-in-law; he did not claim under that deed, nor did he claim the land conveyed by it. On a probate by *John Porter*, it could be legally recorded; and when recorded, a copy was evidence to all the world, it is not the case of *Peters* v. *Cundron*, 2 *Serg. & Rawle.* There *R. Peters* the plaintiff proved a deed of partition, under which he as plaintiff in that case claimed.

It was admitted in this case, that as this deed had been recorded, a copy from the record would have been legal evidence; we have decided this term in *Kelly* v. *Dunlop*\* that the original so proved as to be entitled to record, is evidence.

\* *Postea* 136.

(Jones *v.* Porter.)

The plaintiff having shewn title, the defendant relied on the length of their possession; and they had been more than twenty-one years in the actual possession of the tract, before suit brought. The plaintiff alleged that the defendant's ancestor entered as a tenant of the plaintiff.

The proof was, that in 1807 *H. Philliber* proposed to settle on a tract in the neighborhood, that a *W. M'Laughlin*, who had the care of *Porter's* land, advised *Philliber* to go on the tract in question, went with him, shewed him the land, and told him that he had been requested by *Porter* to get some person to go on the land and make improvements and pay the taxes: and after shewing it said "*Henry* I advise you to go on the land, you will get a good lease at any rate," and on *Philliber* making some objection for want of a team, *M'Laughlin* promised to send a team to haul logs together, when they were cut, for his house. It was further proved, that about 1812, two of *Porter's* heirs came to *M'Laughlin's* and were directed to *Philliber's*, and that afterwards *Philliber* said they staid all night with him; on his being asked if they had done any thing about the place, replied, they had not, but that he was to live on it, for the heirs were scattered and there could be nothing done for several years.

Defendant called many witnesses, and fully proved his settlement and residence; none of the witnesses had ever heard him mention the *Porters:* one of them proved that on the day he built his house, he said he would live there till he died, if they would let him;—to what persons the word *they* referred did not expressly appear.

The court left it to the jury whether the possession was adverse to the plaintiffs; expressing an opinion, that if the witnesses were believed, it was not.

In the discussion of this cause, a good deal was said about adverse possession, and what would or would not amount to such possession, as that the statute would, after twenty-one years, protect a man. In some of the cases it seems as if the judge thought the man in possession must, to be protected, have heard of another claim, and must have entered and held in direct hostility to such claim; this is not the law in this state, if it is anywhere.   Here at one time we had much, and still have some land, never sold by the state, called *vacant* land; the first person who sits down on such land, acquires by his labour and residence a right to it; he must at some time pay the state for it, but against all others his right is good. It happens sometimes that land actually sold by the state, is by mistake, supposed vacant, and under the idea that it is vacant, a person goes on it and labours and resides; it becomes his home, and he believes it is his own; he claims it and knows of no other claim;—yet his possession is adverse to all the world:—it is the

(Jones *v.* Porter.)

very definition of an adverse possession; his entry was a trespass on the owner, though he did not know there was an owner; and his claiming it as his own, is holding adversely, to any and every person. The decisions of the most respected courts support this idea. A vendee in fee derives his title from the vendor, but his title, though derivative, is adverse to the vendor; he enters and holds for himself." 4 *Peters* 504. 7 *Wheaton,* 535. And it is laid down as the doctrine of that court, "that wherever the proof is, that one in possession holds for himself, to the exclusion of all others, the possession so held, must be adverse to all others, whatever relation in point of interest or privity he may stand in to others." 5 *Peters* 440. And in that case, the deed under which the defendant entered and claimed was void for one half; the vendors sold all, they had only authority to sell one half.—Such also is the doctrine in New-York. 9 *Cowen* 551, 2, 3. Where the deed purports to convey only *part*, the entry and possession will be presumed to be according to the right; but this may be rebutted by proof of a sole possession accompanied by a notorious claim of an exclusive right to the whole, 7 *Wheaton* 60.

A man may also enter on and continue in possession of land which he believes or knows, is claimed by another, but notoriously claiming for himself in opposition to that other; and twenty-one years of possession will protect him; and this protection is not lost by declarations, that if the adverse right is asserted and proves the best, he must yield to it.

There is still another case, a man may enter on land, knowing of an adverse title, and admitting it, and intending to claim under it, and to take a lease when the owner comes; or may enter under a contract with the owner or with his agent, and such entry and possession is not adverse, until he declares his intention to hold and claim for himself: and this is more particularly the case, when the owner or his agent shewed the land to the tenant, and induced him to take possession under and for the owner.

How the tenants or their father-in-law entered in the present instance, as in all cases, is a fact to be decided by the jury, and was properly submitted to them. There was proof uncontradicted, that he was shewn the land and induced to go on it by the agent of the plaintiffs, to improve the land for them, on a promise of a good lease. That several of the witnesses never heard him speak of the plaintiffs is no proof against this: Nor is the declaration that he would stay there as long as he lived if *they* would let him. *They* might refer to the plaintiffs, and no witness heard him say he entered claiming as his own; or that he held it as his own. How he entered and claimed was properly left to the jury; whether plaintiff's witnesses were to be believed was to be decided by the jury; if believed the cause was with the plaintiffs.

Judgment affirmed.