## 𝖂𝖞𝖙𝖍𝖊𝖛𝖎𝖑𝖑𝖊.

JOHNSTON AND OTHERS v. VIRGINIA COAL AND IRON CO.

JUNE 30, 1898.

Absent, Cardwell and Buchanan, JJ.

1. GRANT OF WHOLE ESTATE BY TENANT IN COMMON—*Color of Title—Adverse Possession—Suit for Partition by Co-Tenants—Statute of Limitations.*—A stranger who takes a conveyance of the whole estate in a tract of land conveyed to him by metes and bounds, and enters into exclusive possession under such conveyance, claiming title to the whole, acquires at least color of title to the whole tract even though his grantor was only a tenant in common with others of the land, and, after the lapse of time necessary to bar an action of ejectment, has the right to rely upon his adversary possession, and is in no sense a co-tenant with the tenants in common of his grantor, and a court of chancery has no jurisdiction of a suit for partition by such tenants in common; but even if the court had such jurisdiction, the claim of the co-tenants being barred by the statute of limitations, the suit should be dismissed.

Appeal from a decree of the Circuit Court of Wise county pronounced January 26, 1895, in a suit in chancery wherein the appellants were the complainants, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*Blair & Blair, George A. Smith, John A. Hutchinson,* and *B. H. Sewell,* for the appellants.

*Bullitt & McDowell, E. M. Fulton, R. C. Dale,* and *R. A. Ayers,* for the appellees.

HARRISON, J., delivered the opinion of the court.

It appears from the record that on January 30, 1796, the Commonwealth of Virginia issued a patent to Nathaniel Taylor, Nathan Fields, and John Johnson, all non-residents of the State, granting to them a tract of land containing sixty-two thousand acres, situated, at the time of the grant, in Lee county, the larger part of the tract being now located in Wise county.

The entries and surveys for this patent had been made in 1795, and before the patent was formally issued, to-wit, on January 1, 1796, Nathan Fields conveyed to Nathaniel Taylor all of his right, title, and interest in the tract of land called for by the grant.

In 1816 Nathaniel Taylor died, leaving a will, by which he directed his executors " to sell so much of his back lands and other property as could best be spared, sufficient to pay all of his just debts."

In 1827 Mary Taylor and James P. Taylor, as executrix and executor of this will, sold and conveyed to John Crabtree a boundary containing twelve thousand eight hundred acres, it being part of the sixty-two thousand acres covered by the patent of January, 1796.

The evidence shows that Crabtree took possession under this deed, and commenced selling off portions of the land thereby conveyed, and that he and his grantees have been in the open, notorious, uninterrupted, adverse possession thereof ever since. Among other alienations by Crabtree of this land, he conveyed by deed dated March 18, 1833, four thousand acres to J. C. Olinger.

The sale of twelve thousand eight hundred acres by Taylor to Crabtree left of the Taylor, Field, and Johnson patent forty-nine thousand two hundred acres, which residue stood on the land books for the years 1833–1834, assessed in the name of " Taylor's heirs."

At the October court for Lee county, on the 21st of October, 1834, this residue of forty-nine thousand two hundred acres was offered for sale at public auction for the non-payment of $4.92, the taxes due thereon for the year 1834, and forty-eight thousand and two hundred acres thereof was knocked down to J. C. Olinger, no other person offering to pay the taxes for a less quantity of said land.

On the the 7th of December, 1836, Alexander Mills, clerk of the County Court of Lee county, conveyed to J. C. Olinger the forty-eight thousand two hundred acres purchased by him at this tax sale. This deed sets forth that J. C. Olinger had complied with the terms of his purchase and the requirements of law in respect thereto, and expressly reserves on its face the residue of the forty-nine thousand two hundred acres, to-wit, one thousand acres not sold to Olinger.

This residue of one thousand acres reappeared upon the land books in the name of Taylor, Fields, and Johnson, and was sold for taxes due thereon, and conveyed to the purchaser, Henry S. Kane, by Claiborne Anderson, commissioner of delinquent and forfeited lands for Lee county, by deed dated November 20, 1842.

By deed dated May 12, 1853, J. C. Olinger conveyed to Henry S. Kane an undivided one-half interest in the forty-eight thousand two hundred acres bought by him in 1834 at the tax sale.

J. C. Olinger, by his will probated in 1863, devised to his children his undivided half interest in this forty-eight thousand two hundred acre tract held jointly with Henry S. Kane.

In 1876 Henry S. Kane died intestate, and it is conceded, by agreement of counsel, that his undivided interest in the forty-eight thousand two hundred acres was sold in appropriate proceedings under a decree of the Circuit Court of Scott county, and conveyed by Vance and Wood, commissioners acting under decree of that court, to the purchaser, C. S. O. Tintsman, by deed dated April 30, 1880.

In 1881 the heirs of J. C. Olinger conveyed the undivided half interest in the forty-eight thousand two hundred acres derived by them under the will of their father to C. S. O. Tintsman, and in the same year Tintsman conveyed the whole tract that vested in him by these several deeds to E. K. Hyndman.

By deed dated May 6, 1882, E. K. Hyndman and wife conveyed, together with other lands, this forty-eight thousand two hundred acres, which has been known and described all through these transactions as the " Olinger survey," subject to certain reservations mentioned in the deed, to the Virginia Coal and Iron Company, the appellee here.

As already stated the three original patentees were non-residents of the State of Virginia, and none of them was ever in the actual possession of the land.

This suit was brought to the June rules, 1893, of the Circuit Court of Wise county, by Joseph T. Johnston and some thirty other persons residing in some ten different States of the Union, representing themselves as the children, grandchildren, and heirs at law of John Johnston, deceased, who they say was sometimes known as John Johnson, and further allege that their ancestor was the John Johnson named in the patent of 1796, and that he resided up to the time of his death in the State of Pennsylvania, and died intestate in the year 1826, leaving to them as his heirs at law an undivided one-third interest in the tract of sixty-two thousand acres mentioned in the patent of 1796 to Taylor, Fields, and Johnson.   They further allege that they are tenants in common with those claiming to be the owners of the Taylor and Fields interests in said patent, and pray that there may be a partition in kind between the various owners, and an account for rent, &c.

The land in dispute in the case now before us, is the forty-eight thousand two hundred acres bought by J. C. Olinger at the tax sale in 1834, and we do not understand it to be denied that said land is now in possession of the Virginia Coal and Iron Company, under and by virtue of the various alienations through which it has passed from J. C. Olinger to the appellee.

The evidence abundantly shows that immediately after J. C. Olinger obtained the deed from Mills, clerk, in 1836, he took actual possession of the land conveyed to him, and that he and those claiming under him have been in open, notorious, continuous possession thereof, claiming and dealing with the whole as their own from that day to this.

It is contended, however, by appellants that the effect of the deed in 1827 by Taylor's executors to John Crabtree for twelve thousand eight hundred acres by metes and bounds was to make him a co-tenant to the extent of the interest thereby conveyed with the heirs of Johnson, and the estate of Taylor in the sixty-two thousand acres of land; and that the conveyance by Crabtree to J. C. Olinger in 1833 for four thousand acres made Olinger a co-tenant with the heirs of Johnson and the estate of Taylor, and that therefore when J. C. Olinger bought the forty-eight thousand two hundred acres by metes and bounds at the tax sale in 1834, he, being a tenant in common with the Johnson heirs at that time, could not buy and hold adversely to them, but that his purchase inured to the common benefit of all his co-tenants. It is likewise contended that each of the subsequent alienations to the various owners of this land through the last fifty years down to the acquisition of the entire title by the appellee, has had the effect of bringing each of said several vendees into the same fellowship and confidence, in respect to the title and interest of each, as exists between co-tenants, and that this relation existing between the parties gives the appellants the right to maintain this suit for partition.

Without by any means admitting this to be a sound proposition, or that the relation of tenants in common ever existed between J. C. Olinger and the appellants, under the circumstances disclosed by this record, it is sufficient to say that when the Virginia Coal and Iron Company became the purchaser of the entire boundary by metes and bounds in 1882, it was a stranger, and had never before owned any part of the land,

and therefore could not have occupied any relation of trust and confidence to appellants. There can be no question that the deed from E. K. Hyndman, dated May 6, 1882, conveying the entire tract by metes and bounds to the Virginia Coal and Iron Company gave that company color of title for the whole boundary.

While the exact question did not arise in *Buchanan* v. *King*, 22 Gratt. 422, the law is there well stated by Judge Staples as follows : " It is equally true that if a purchaser takes the conveyance of the whole estate from one tenant in common, and enters into exclusive possession under such conveyance claiming title to the whole, this is an ouster of the other tenants; and the grantee, so entering and claiming title, may rely upon his adversary possession, if continued a sufficient period to bar the recovery by the other tenants."

In Sedg. & Wait on trial of title to lands, sec. 287, the law is thus stated : " Where the grantee has obtained a conveyance of the whole estate from one of the co-tenants, entry made under such a title is disseisen of the other co-tenants. This doctrine is just and reasonable, for the grantee does not intend to enter or hold as a co-tenant. His entry is adverse. The same principle applies to joint tenants."

This principle is so universally settled that a further discussion of it is wholly unnecessary. See Freeman on Co-tenancy, sec. 197 ; *Town* v. *Needham*, 3 Paige Ch. 545 (24 Amer. Dec. 248) ; *Culler* v. *Motzer*, 13 Sergt. & Rawle, 336 (15 Amer. Dec. 604) ; *Kitridge* v. *The Prop. of Canal*, 17 .Pick. 246 ; *Bradstreet* v. *Huntington*, 5 Peters 402.

The evidence is clear that when the appellee became the purchaser, May 6, 1882, of this entire boundary, it took actual possession at once of the land conveyed, and has been ever since in the open, notorious, continuous, adverse possession thereof, with the evidences of its possession and ownership daily increasing, until now it has spent several hundred thousand dollars in surveys, coal openings, coke ovens, and other improvements, and has tenants scattered all over the property.

Inasmuch as the appellee was a stranger at the time it took a conveyance of the whole estate from the alienees of J. C. Olinger, and entered into exclusive possession under such conveyance claiming title to the whole, it has a right to rely upon its adversary possession, and is in no sense a tenant in common with the appellants. This being so, a court of chancery had no jurisdiction to entertain the suit of appellants for partition, and the bill was therefore properly dismissed.

If, however, the court had jurisdiction, the result would be the same, for as already seen the appellee has been in the open, notorious, uninterrupted, adverse possession of the whole tract under the deed from E. K. Hyndman of May 6, 1882, for more than ten years before the institution of this suit, and the claim of appellants is therefore barred by the statute of limitations. Code, sec. 2915.

For these reasons the decree appealed from must be affirmed.

*Affirmed.*