258 VA. COAL, ETC. CO. *v.* RICH'D, ETC. CORP., 128 VA. 258.

Syllabus.

Staunton.

## THE VIRGINIA COAL AND IRON COMPANY.

v.

## RICHMOND AND CLINCHFIELD COAL CORPORATION.

September 16, 1920.

1. PARTITION—*Parol Partition.*—A parol partition by co-owners of a tract of land, no deeds having been made, was a nullity, the parties not being co-parceners.

2. DEEDS—*Uncertainty—Description of Boundaries.*—A deed is not void for uncertainty because the boundaries of the tract conveyed are not described in it, where it refers to the tract as the same as that conveyed by another deed, in which the courses and distances of the circumscribing lines of the boundary are set out in complete detail.

3. MINES AND MINERALS—*Severance of Surface and Minerals—Deed by One Joint Tenant.*—The general owner or owners of land may grant all the minerals in the land, or any particular species of them, as coal, iron or lead, etc., and remain the owner or owners of the surface, etc., or may grant the land and reserve the minerals or any particular species of them and thus create a separate estate in the minerals, or mineral, reserved distinct from the land in which they are found. Yet such a conveyance by less than all the joint tenants where land is so owned does not effect a severance of the mineral interest from the surface, but makes the grantee, if he be a stranger, a tenant in common with the joint tenant who did not unite in the conveyance.

4. JOINT TENANTS AND TENANTS IN COMMON—*Conveyance by Joint Tenant—Severance of Title—Minerals.*—While a joint tenant has capacity to transfer his undivided share in the land, he has no right to convey by metes and bounds any part of the land, or to convey the mineral and reserve the surface to the prejudice of his co-owners. A conveyance by a joint tenant of his undivided interest in land owned in fee, to a stranger, no matter how that interest was described, would not effect a severance of his interest from that of his co-tenants. *A fortiori* a like conveyance of his mineral interest only could not operate as a severance of his mineral interest from the surface.

5. ADVERSE POSSESSION—*Joint Tenants and Tenants in Common.*— While the entry and possession of one tenant in common is ordinarily deemed the entry and possession of all, yet a "tenant in common may enter adversely and claim in severalty, and where he does so the statute of limitations will run in his favor and against his co-tenants."

6. ADVERSE POSSESSION—*Mines and Minerals—Presumption from Deed to Fee—Case at Bar.*—When one enters upon land he is presumed to enter under the title which his deed upon its face purports to convey, both as to the boundary or extent of the land and the nature of his title. In the instant case the deed in question conveyed the tract specifically by metes and bounds to the grantee and purported to convey the fee in the whole. the grantee took possession under this deed, and in the absence of anything to the contrary he is presumed to have entered under a claim of title to the whole in fee, and there having been no severance of the minerals from the surface, his possession, if continued for the statutory period, establishes a complete title to the land in fee, both as to the minerals and the surface.

Appeal from a decree of the Circuit Court of Wise county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Bullitt & Chalkley,* for the appellant.

*G. W. Kilgore, S. H. Bond, Morison, Morison & Robertson* and *E. M. Fulton,* for the appellees.

SAUNDERS, J., delivered the opinion of the court.

This is a controversy in part between J. C. Richmond and the Virginia Coal and Iron Company, and in other part between Richmond and the Clinchfield Coal Corporation. J. C. Richmond is the owner of a tract of ninety-six and three fourths acres of land (hereinafter referred to as

260 VA. COAL, ETC. CO. *v.* RICH'D, ETC. CORP., 128 VA. 258.

Opinion.

the ninety-six-acre tract) on Haddox branch, in Wise county, Virginia. The Virginia Coal and Iron Company (hereinafter called the Coal and Iron Company) claims the coal and other minerals underlying this land.

Richmond acquired title to the above tract by a deed from one F. M. Chisenhall, bearing date February 21, 1891. This same tract was conveyed by metes and bounds by Galen M. Roberts and wife to said Chisenhall on September 29, 1890, by deed with general warranty. This deed was duly recorded in the clerk's office of Wise county on October 4th of the same year. By deed of November 20, 1882, with general warranty, one W. L. Roberts and wife conveyed to the said Chisenhall, by natural boundaries, a tract of land containing, by guess, two hundred acres. The natural boundaries in this deed recited, are in considerable measure the same as those given in a deed made by the same Roberts to Price and Steinman. These boundaries include the ninety-six-acre tract. This deed to Price and Steinman will be hereinafter referred to in another connection.

On March 30, 1903, Richmond and wife conveyed to W. H. Roberts a one-half interest in the ninety-six-acre tract, and other lands, "in fee simple, and the coal and mineral rights," for valuable consideration. By deed of February 7, 1903, Richmond and wife and Roberts and wife conveyed all the coal, "in, under and upon" the ninety-six-acre tract to R. P. Bruce and W. H. Bond, reserving a vendor's lien to secure the purchase price. By deed of June 9, 1903, Bruce and Bond conveyed their interests in the ninety-six-acre tract to the Clinchfield Coal Corporation, in consideration of a certain sum in hand paid and of the assumption of other sums by the said corporation.

In 1916, Richmond filed his bill of complaint in the Circuit Court of Wise county, alleging his ownership of the ninety-six-acre tract, and setting forth such of the above

recited conveyances as constitute his chain of title from Galen Roberts of the ninety-six-acre tract, as well as the conveyances by which title to the coal on said tract was lodged in the Coal Corporation. The bill further alleged that the Coal Corporation, the plaintiff's debtor, declined to pay the balance due from it to the said Richmond, on the ground that the Coal and Iron Company, the appellant in this case, claimed the coal and other minerals on the said ninety-six-acres. Richmond asked that the said Coal and Iron Company be made a party to his bill, and that the cloud upon his title created by its claim be removed.

The Coal and Iron Company, on being thus impleaded, demurred to the plaintiff's bill on various grounds, one being that the Coal Corporation was a necessary party to the bill. The court sustained the demurrer on this ground. Thereupon the plaintiff filed an amended and supplemental bill, bringing in the Clinchfield Coal Corporation, and asking that this corporation be required to pay the balance due from it to the plaintiff. To this bill the Coal Corporation filed a demurrer and answer. Richmond filed a replication to this answer, and the Coal Corporation filed exceptions to the replication. Later the Coal and Iron Company filed grounds of demurrer to the amended and supplemental bill. The court overruled both demurrers. Thereupon the Coal and Iron Company filed its answer to the amended bill, and to the answer of the Coal Corporation, treated as a cross-bill. To this answer Richmond filed a replication, alleged by the Coal and Iron Company to be more in the nature of an answer and brief than a replication.

The pleadings having been completed, all parties proceeded to take depositions, and in due course the case came on to be heard. The trial court held that the claim of the Coal and Iron Company was a cloud upon the title of the Coal Corporation, and removed the same. Further, the court decreed that the plaintiff, Richmond, should recover

the amounts due him by the Coal Corporation, and directed the coal and other minerals on the ninety-six-acre tract to be sold, unless the ascertained balance of indebtedness was paid. From this decree the Coal and Iron Company secured an appeal, thereby bringing the entire proceedings before this court for determination.

[1] The claim of the Coal and Iron Company to the coal and other minerals on the ninety-six-acre tract arises in this wise: On December 24, 1874, W. L. Roberts conveyed to J. D. Price and A. J. Steinman, by deed with general warranty and by natural boundaries, the coal and other minerals on a tract estimated to contain 300 acres, more or less. This deed from Roberts to Price and Steinman contains a recital to the effect, that "this 300-acre tract is the same tract of land that was conveyed to W. L. Roberts by Galen Roberts and wife, by deed of the same date, recorded in the clerk's office of Wise county court," but it is conceded that no such deed is of record or has ever been located. Subsequent to this deed to Price and Steinman, Price conveyed to Steinman an undivided one-half interest in and to the coal and minerals conveyed to the said parties jointly by W. L. Roberts. By deed of January 1, 1908, Steinman and wife conveyed the mineral rights on the ninety-six-acre tract—that is to say, their mineral rights in the larger tract of 300 acres, which included the ninety-six-acre tract—to the Coal and Iron Company, the appellant in these proceedings. This deed was duly recorded in the clerk's office of Wise county. Title to none of the lands conveyed in the deeds recited, *supra*, is traced to the Commonwealth. All of them are claimed to be within the limits of a patent issued to one Richard Smith in 1789, and this claim is admitted to be true in the brief of the appellant; but there is a gap in the ascending line to Smith which is never crossed. The title can be traced back to the Warder brothers and George V. Bacon, but no deed is adduced from Smith, his heirs, or

grantees, to these parties. Beginning with the Warders we find that by deed of December 5, 1851, Benjamin H. Warder, Geo. V. Bacon and George A. Warder, by William B. Aston, their attorney, convey to one James J. Rogers, by metes and bounds, a tract of two thousand acres on Guest's river. This boundary comprehends within its limits the ninety-six acres, *supra.* The deed to James J. Rogers is claimed to have been secured by fraud. The facts in connection with this charge of fraud are not very full, or clear, but it does appear that subsequent to this deed to James J. Rogers a suit was brought in the Circuit Court of Russell county by Lewis Roberts against James J. Rogers, Thomas Rogers and Andrew Day. A decree was entered in this suit on April 19, 1854, by which William B. Aston was directed, as a commissioner for that purpose, to execute on behalf of ·James J. Rogers a deed of conveyance to the complainant, the said Lewis Roberts, for one full and undivided third of the tract of land bought by the complainant and the defendants, Thomas Rogers and Andrew Day, from the Warders, and subsequently conveyed to James J. Rogers. Pursuant to this decree William B. Aston, on May 15, 1854, conveyed to Lewis Roberts "an equal undivided third part of the land named in the complainant's bill, and supposed to contain two thousand acres, the same being on Guest's river, and being the same tract conveyed to James J. Rogers by Benjamin Warder and others, by deed bearing date December 5, 1851," and duly recorded. Copies of this deed, of the deed by the Warders to James J. Rogers, and of the decree cited, *supra,* are furnished by the clerk of Russell county, and will be found in the record. The clerk of Russell county, certifies that the original papers in the suit cannot be found in his office. It does not appear how Thomas Rogers and Andrew Day acquired their respective interests in the two thousand acres from James J. Rogers, whether by voluntary deeds from the said Rogers or by the compulsion of a suit. But evidently they did recover these interests since later

we find Galen Roberts (the grantee of Lewis Roberts), Andrew Day and Thomas Rogers making a parol partition of the two thousand-acre boundary. James J. Rogers is heard of no more. Appellant insists that this partition between Galen Roberts, Thomas T. Rogers and Andrew Day was a nullity, no deeds having been made. This contention is well taken, as these parties were not coparceners. On December 7, 1854, Lewis Roberts conveyed to Galen M. Roberts an undivided one-third interest in the tract of land, "known as the Rogers, Roberts and Day land, and purchased of W. B. Aston, commissioner, * * *"

[2] Appellant suggests that as "there is no proof as to what were the boundaries of the so-called Rogers, Roberts and Day land," the deed from Lewis Roberts to Galen Roberts is probably void for uncertainty. But the suggestion that there is no proof of the boundaries of this tract is founded upon misapprehension. The deed of Aston, commissioner, to Lewis Roberts conveys a one-third interest in a tract of two thousand acres, and recites that this tract is the same tract conveyed to James J. Rogers by Benjamin Warder and others. In the deed thus referred to, the courses and distances of the circumscribing lines of the two thousand-acre boundary are set out in complete detail.

Various questions of technical law, growing out of the demurrers and exceptions, were raised before and decided by the trial court, and the action of the court on these questions is assigned as error in the petition of the appellant. But in the oral argument in this court these alleged errors were not discussed, and we were asked by counsel for appellant to dispose of this case on its merits and determine the true ownership of the coal and other minerals in controversy.

The assignment of error that presents the merits of this controversy is the following: "That the court erred in entering the said decree, holding that the claim of your pe-

titioner to the coal and minerals on said land was a cloud upon the title thereto, and in cancelling and holding for naught the deeds under which your petitioner claims title to the said coal and minerals."

Galen Roberts entered into possession of the land conveyed to him by his father, Lewis Roberts, prior to the Civil War and in the early fifties. For a while he lived upon this land, first near the mouth of Haddox branch, and later at or near the source of that stream. Still later he moved from the last location, and W. L. Roberts moved upon the land at the headwaters of Haddox branch. This was sometime prior to 1874. Some sort of understanding, not very clearly defined, existed between Galen Roberts and W. L. Roberts, in relation to this land, but it does appear that W. L. Roberts held and occupied, doubtless under a contract of purchase, a portion of the land which was assigned to Galen Roberts in the partition referred to, *supra.* Division lines were established between him and Galen Roberts, but there was no conveyance by Galen Roberts to W. L. Roberts of the land occupied by the latter, though Galen Roberts may have been under obligation to convey to W. L. Roberts upon the execution by the latter of the contract between them. The boundary occupied by W. L. Roberts included, as a portion thereof, the ninety-six-acre tract.

Some time prior to 1882, F. M. Chisenhall purchased a part of the land held by W. L. Roberts, including the land in controversy, and a little later settled upon this land. The deed from W. L. Roberts to Chisenhall makes no reference to the deed from the same grantor to Price and Steinman, conveying the mineral interests. Neither Price nor Steinman, nor any one claiming under them, have ever taken actual possession of the minerals conveyed to Price and Steinman by Roberts, or in any wise excavated for or explored them.

It is alleged, and in no wise disproved, or undertaken to

266 VA. COAL, ETC. CO. *v.* RICH'D, ETC. CORP., 128 VA. 258.

Opinion.

be disproved, that when Richmond purchased the ninety-six-acre tract he took possession of the same and placed a tenant thereon. Indeed, it is very clear from the record that from the time that Richmond entered upon the ninety-six-acre boundary, some time in 1890 or 1891, he has been in full possession and control of the same under the deed from Chisenhall and wife. No one appears to have taken any overt step in relation to the minerals on this land, either prior to or dating from Richmond's entry upon and possession of his purchase. When Richmond, sometime in 1915, made inquiry of the vice-president of the Coal and Iron Company whether his company was making any claim to the coal and other minerals on the ninety-six-acre tract, the answer was in the negative. Later the company retracted this statement, and in a letter to Richmond of September 25, 1915, the company announced that, having investigated the matter, it did claim title to the minerals through the deed of Price and Steinman. The appellant maintains that this deed effected a severance of the coal and minerals, and that W. L. Roberts is the common source of title for it and J. C. Richmond. Hence, the company insists that it holds the better title to the minerals on the ninety-six-acre tract, on the ground that the deed to Price and Steinman preceded the sale to Richmond and was of record when the latter bought of Chisenhall.

On the part of J. C. Richmond it is claimed that there was nothing to show that W. L. Roberts had ever owned the ninety-six-acre tract, and there was no reason to look to the records for a deed from Roberts to Price and Steinman of this land. Further, it is insisted, with reference to the ninety-six-acre tract, that Chisenhall procured title to the same from Galen Roberts, the grantee of Lewis Roberts, and that Galen Roberts and not W. L. Roberts is the source of Richmond's title.

The case of *Virginia Coal and Iron Co.* v. *Hylton*, 115 Va.

418, 79 S. E. 337, is so pertinent to the case in judgment, and the conclusions announced in that case so controlling, that for the purposes of convenience and clarity in referring to and making use of that case, a lengthy citation from the opinion will be made at this point:

"BUCHANAN, J.:

"This suit was instituted by the appellant, The Virginia Coal and Iron Company, for the purpose of obtaining partition of the coal and other minerals in and under a 700-acre tract of land lying in Wise county. The appellant claimed an undivided four-fifths interest in the mineral under a conveyance to J. D. Price and A. J. Steinman from the wife and three of the four children of James M. Gibson made in the year 1874. The appellant by regular conveyances acquired the title of Price and Steinman to the said mineral interests. After the conveyance to Price and Steinman the children of James M. Gibson, including Tabitha, who was not a party to that deed, made a parol partition of the 700-acre tract of land. The land was divided into three parcels—the share of Tabitha, the wife of George W. Hylton, and the share of C. W. Gibson, her brother (who had sold or contracted to sell his share to George W. Hylton), being laid off as one parcel. Afterwards H. F. Gibson and W. B. Gibson exchanged the parcel allotted to each of them. The owners of the mineral interests other than Hylton's wife were not parties to that partition and so far as the record shows had no notice of it.

"One of the defenses set up by the present owners of the Hylton parcel of land and the W. B. Gibson parcel, known in the record as the Van Buren Bolling land, is that they are the owners of the mineral by adversary possession. The appellant insists that the conveyance to Price and Steinman of the minerals embraced in their deed operated as a severance of the mineral interest from the surface. This is de-

268 VA. COAL, ETC. CO. *v.* RICH'D, ETC. CORP., 128 VA. 258.

Opinion.

nied by the appellees. They claim that in order for a conveyance of the mineral in land to effect a severance of the mineral interest from the surface, the grantor in the deed must be the owner of the legal title, and that as the grantors in the deed to Price and ,Steinman were not, as the appellees claim, the owners of the legal title when they conveyed the mineral interest, such conveyance did not effect a severance.

"Whether the grantors were or were not the owners of the legal title at that time, or whether or not it be true as contended by the appellees that a severance of the mineral interest from the surface is not effected by the conveyance of the mineral and a reservation of the surface unless the grantor in such conveyance be the owner of the legal title, need not be determined in this case; for if it were held that the grantors in that deed were clothed with the legal title, or that the conveyance by the owners of the equitable title would effect a severance as well as a conveyance by the owner of the legal title, there was no severance in this case.

"It is well settled that the general owner or owners of land may grant all the minerals in the land, or any particular species of them, as coal, iron or lead, etc., and remain the owner or owners of the surface, etc., or may grant the land and reserve the minerals or any particular species of them and thus create a separate estate in the minerals, or mineral, reserved distinct from the land in which they are found. *Va. Coal & Iron Co.* v. *Kelly*, 93 Va. 332, 336, 24 S. E. 1020; *Interstate C. & I. Co.* v. *Clintwood, etc.*, 105 Va. 574, 54 S. E. 593; *Morison* v. *American Association*, 110 Va. 91, 65 S. E. 469; *Adams* v. *Briggs*, 7 Cush. (Mass.) 361, 366-7; *Caldwell* v. *Copeland*, 37 Penn. St. 427, 78 Am. Dec. 436; Barringer and Adams on Mining, etc., 35-6. Yet such a conveyance by less than all the joint tenants where land is so owned, does not effect a severance of the mineral interest from the surface, but makes the grantee, if he be a stranger,

a tenant in common with the joint tenant who did not unite in the conveyance.

"While a joint tenant has capacity to transfer his undivided share in the land, he has no right to convey by metes and bounds any part of the land, or to convey the mineral and reserve the surface to the prejudice of his co-owners. I Minor's Real Prop. sec. 889, and authorities cited; Freeman on Co-tenancy, secs. 196-198.

"The reason for this doctrine is stated by Chief Justice Shaw in *Adam and others* v. *Briggs Iron Co.*, 7 Cush. 361, 368, and by Allen, P., in *Robinett* v. *Preston*, 2 Rob. (41 Va.) 273, 276-8.

"In this case if the grantors in the conveyance to Price and Steinman had conveyed their entire undivided interest in the land, the surface as well as the minerals, it would not, no matter how that interest was described, have effected a severance of their interest in the land from that of their sister, Mrs. Hylton, but would have made their grantees tenants in common with her. *Robinett* v. *Preston's Heirs, supra; Cox* v. *McMullen,* 14 Gratt. (55 Va.) 422; *Buchanan* v. *King,* 25 Gratt. (63 Va.) 422; *Wood* v. *Early,* 95 Va. 307, 312-13, 28 S. E. 374; Freeman on Co-tenancy, secs. 194-6. *A fortiori* a like conveyance of their undivided mineral interest only could not operate as a severance of their mineral interest from the surface.

"In some jurisdictions a conveyance by less than all of the joint tenants of their interest in the land by metes and bounds, or of their mineral interest only, seems to be regarded as void against their co-tenant (*Adam, etc.* v. *Briggs, supra;* Freeman on Co-tenancy, 198-203), but with us while one joint tenant cannot make any conveyance to the prejudice of his co-tenants, yet the deed is not void, but would, especially under our statutes, be effectual to pass the interest conveyed, making his grantee a tenant in common with his grantor's co-tenants. Code, sec. 2419; *Robinett* v. *Pres-*

270 VA. COAL, ETC. CO. *v.* RICH'D, ETC. CORP., 128 VA. 258.

Opinion.

*ton's Heirs, supra; Cox* v. *McMullen, supra; Buchanan* v. *King, supra; Wood* v. *Early, supra;* Freeman on Co-tenancy, *supra.*

"The next question to be considered is whether or not Hylton or those claiming under him acquired title to the mineral interests claimed by the appellant in that portion of the 700-acre tract allotted in the parol partition as the shares of Hylton's wife and her brother, C. W. Gibson, by adversary possession. This partition, as before stated, was made after the sale and conveyance of the said mineral interest to Price and Steinman by the children of James M. Gibson, who seem to have considered their mother as having a mere dower interest in the land. At least they divided the land into four shares, laying off Mrs. Hylton's and C. W. Gibson's shares together as one parcel, Hylton at the time of the partition having purchased or contracted to purchase the interest of C. W. Gibson. So far as the record shows, neither the wife nor either of her children have ever questioned the validity of said partition, and it seems to have been acquiesced in by all of them. In the year 1877, after the partition, the wife and children of James M. Gibson, other than Hylton's wife, executed a deed to Hylton, in consideration (as recited therein) of two hundred dollars, by which they conveyed to him 'a certain tract or parcel of land,' describing it by metes and bounds, with covenants of general warranty. The parcel of land, it is conceded, or at least is clearly shown, to be the same parcel allotted as the shares of Hylton's wife and C. W. Gibson in the parol partition, but no reference is made in the deed to the partition. In October, 1880, after James M. Gibson had obtained a conveyance from the heirs of Wm. Boggs, from whom the appellees claim that James M. Gibson purchased the 700-acre tract, or at least a part thereof (but had not fully paid the purchase price and obtained a conveyance), Gibson executed a deed to Hylton in consideration of $600, as recited

therein, by which he conveyed the same land embraced in the said conveyance of 1877 (though no reference is made to that deed) with covenants of general warranty. Both deeds were duly recorded. The appellees claim that Hylton took actual possession of the land under the conveyance of 1877, and has ever since in person or by tenants been in possession thereof claiming it in fee. The appellant claims that Hylton and his wife went into possession of the surface of the land after that deed was made, and that they and those claiming under them have continued in the possession of the surface down to the present. But it denies that such possession gave Hylton possession of the minerals under the facts and circumstances of this case.

"It is well settled in this State that where a purchaser, if he be a stranger to the title, takes a conveyance of the whole estate in a tract of land, although his grantor was only a tenant in common with others, and in pursuance thereof enters into the exclusive possession of the land, claiming title to the whole, it is an ouster of the other co-tenants and the grantee so entering and claiming title may rely upon his adversary possession if continued the statutory period. *Johnston* v. *Va. Coal & Iron Co.,* 96 Va. 158-163, 31 S. E. 85; *Preston, etc.* v. *Va. Min. Co.,* 107 Va. 245, 248, 57 S. E. 651; Freeman on Co-tenancy, sec. 197.

"It is also well settled that as between tenants in common and others claiming in privity, the entry and possession of one are ordinarily deemed the entry and possession of all, and this presumption will prevail in favor of all until some notorious act of ouster or adversary possession is brought home to the knowledge of the others. Until there is notice, actual or constructive, that the possession is hostile, it will be deemed amicable, notwithstanding the tenant's possession may have been wholly adversary. *Stonestreet* v. *Doyle,* 75 Va. 356, 378-9, 40 Am. Rep. 731, and cases cited; *Pillow* v. *Southwest, etc., Co.,* 92 Va. 144, 23 S. E. 32, 53 Am.

St. Rep. 804. Yet a tenant in common may enter adversely and claim in severalty, and where he does the statute of limitations will run in his favor and against his tenants in common. See *King* v. *Carmichael,* 136 Ind. 20, 35 N. E. 509, 43 Am. St. Rep. 303; *Clymer* v. *Dawkins,* 3 How. (U. S.) 674, 11 L. Ed. 778; *Bradstreet* v. *Huntington,* 5 Pet. 402, 438-440, 8 L. Ed. 170; *Ricard* v. *Williams,* 7 Wheat. 591, 5 L. Ed. 398; *Caperton* v. *Gregory,* 11 Gratt. (55 Va.) 505; Tyler on Ejectment, 882; *Joyce* v. *Dyer,* 189 Mass. 64, 75 N. E. 81, 109 Am. St. Rep. 603; *Greenhill* v. *Biggs,* 85 Ky. 155, 2 S. W. 774, 7 Am. St. Rep. 579; *Johnson* v. *Toulmin,* 18 Ala. 50, 52 Am. Dec. 212; *Crawford* v. *Meis,* 123 Iowa 610, 99 N. W. 186, 66 L. R. A. 154, 101 Am. St. Rep. 337.

"In considering the question whether or not Hylton's entry and possession was adversary and hostile, the familiar principle must be borne in mind that when one enters upon land he is presumed to enter under the title which his deed purports upon its face to convey, both as to the boundary or extent of the land and the nature of his title. The deed to Hylton from his wife and children of James M. Gibson in the year 1877 purported to convey the fee in the whole. It is not controverted that he entered and took possession of the land under that deed, and in the absence of anything to the contrary he is presumed to have entered under a claim of title to the whole in fee. This is not a case where a tenant in common being, or entering into, possession as such afterwards attempts to claim that his possession was adverse to his tenants in common. Hylton did not enter as tenant in common. From the first he is presumed, indeed he is proved, to have claimed under his deed, and there is nothing to show that he or those who claim under him ever acknowledged that the title to the land was anything other than as it appeared upon the face of his deed.

"If Hylton had been in possession of the land under the parol partition as the vendee of C. W. Gibson, or perhaps

in right of his wife, a different question would be presented; but taking a conveyance, which was duly recorded, of the whole land in fee with covenants of general warranty, and under such deed entering into the actual possession thereof claiming title to the whole, must, we think, be regarded as an ouster of the other tenants in common and give Hylton the right to rely upon his adversary possession, which if continued the statutory period would bar the other tenants.

"The evidence clearly shows that Hylton was in the exclusive possession of the land from the year 1877, when he entered under the conveyance of that date, claiming title to the whole tract in fee, until the institution of this suit, a period of thirty years or more. He paid taxes on it throughout these years as the fee simple owner; resided upon it the greater portion of the time; conducted mercantile operations upon it; built upon it, cleared portions of it, and mined coal for his domestic purposes and small quantities for sale. Whether his coal operations during that period would have been sufficient to have given him title to the coal if the mineral interest had been severed from the surface need not be considered, since, as we have seen, there was no such severance; but unquestionably his acts of adversary possession were sufficient to create in him a complete title to the land in fee, mineral as well as surface, for his deed covered both.

"It follows from what has been said that there was no error in the circuit court's action in reference to the Hylton portion of the 700-acre tract."

[3-6] Applying the principles announced in the citation to the instant case, it will be noted that after the conveyance by Lewis Roberts to Galen Roberts the latter was a tenant in common with Andrew Day and Thomas Rogers in the two thousand-acre tract. The ineffectual partition undertaken by these parties did not change their status in the above respect. It is a part of the contention of the ap-

pellant that W. L. Roberts was the vendee of Galen Roberts, and that the latter was compellable to make a deed to him, though the conveyance was never actually executed. Even if this deed had been actually made, W. L. Roberts would none the less have been a tenant in common with Day and Rogers, or those deriving title from them. Price and Steinman, by virtue of the deed to them from W. L. Roberts, became tenants in common with the same parties.

In the case cited, the court held that "even if the grantors to Price and Steinman had conveyed their entire undivided interest in the land, the surface as well as the minerals, it would not, no matter how that interest was described, have effected a severance of their interest in the land from that of their sister, Mrs. Hylton, but would have made their grantees tenants in common with her. *A fortiori,* a like conveyance of their undivided mineral interest only could not operate as a severance of their mineral interest from the surface." The deed from W. L. Roberts to Price and Steinman was a deed conveying to the latter the mineral rights in a tract of three hundred acres, a part of the two thousand-acre tract. This was an undivided mineral interest, and the deed to Price and Steinman did not effect a severance of that interest from the surface. The deed from Galen Roberts to F. M. Chisenhall, conveying to the latter the entire ninety-six-acre tract, served to make Chisenhall, *quoad* that tract, a tenant in common with the co-tenants of Galen Roberts. By virtue of the deed from Chisenhall and wife to Richmond, conveying the same tract by the same metes and bounds, the latter became a tenant in common with the co-tenants of Galen Roberts, and with Price and Steinman, the vendees of W. L. Roberts, who was a purchaser from Galen Roberts.

Referring again to the case cited, it will be observed that three of the children of James Gibson, other than Hylton's wife, conveyed to Hylton a portion of the James M. Gibson

land. These same children had theretofore conveyed to Price and Steinman the minerals in the same land conveyed to Hylton. The latter took possession of the land so conveyed to him, but the adversary litigant, the Coal and Iron Company, denied that this possession of the surface gave Hylton possession of the minerals. The court in the opinion cited, *supra*, stated, first, that "the deed to Price and Steinman by the wife of James M. Gibson and his three children, other than Mrs. Hylton, did not effect a severance of the mineral interest from the surface;" second, that a "tenant in common may enter adversely and claim in severalty, and where he does so the statute of limitations will run in his favor and against his co-tenants;" third, that "in considering whether or not Hylton's entry and possession was adversary and hostile, the familiar principle must be borne in mind, that when one enters upon land he is presumed to enter under the title which his deed upon its face purports to convey, both as to the boundary or extent of the land and the nature of his title. The deed to Hylton purported to convey the fee in the whole. It is not controverted that he entered and took possession of the land under that deed, and in the absence of anything to the contrary he is presumed to have entered under a claim of title to the whole in fee. This is not a case in which a tenant in common being or entering into, possession as such afterwards undertakes to claim that his possession was adverse to his tenants in common. From the first he is presumed, indeed he is proved, to have claimed under his deed, and there is nothing to show that he or those who claim under him ever acknowledged that the title to the land was anything other than it appears upon the face of the deed."

The deed of F. H. Chisenhall conveyed the ninety-six-acre tract specifically by metes and bounds to J. C. Richmond, and purported to convey the fee in the whole. It is not controverted that Richmond entered and took possession under

276 VA. COAL, ETC. CO. *v.* RICH'D, ETC. CORP., 128 VA. 258.

Opinion.

this deed. The Coal and Iron Company do not undertake to claim, or offer to establish, that from the time that Richmond put his tenant in possession of said tract there has been any interference by any one with Richmond's possession and control of the surface of this tract. The contention of the company in this respect is set forth in the following extracts from its answer to the amended and supplemental bill:

"Respondents suppose that it is true that complainant took the deed of February 21, 1891, from said Chisenhall and wife, and suppose that he may have taken possession of the surface of said parcel or tract of land at the time stated in the bill, but respondent expressly denies that complainant took possession of anything other than the surface of said ninety-six and three-fourth-acres and fourteen poles tract of land, and expressly denies that complainant in the manner stated, or in any other manner, took possession of the coals and other minerals and mining rights and privileges conveyed by W. L. Roberts to Price and Steinman, and subsequently continuously held, as aforesaid, by the said Price and Steinman and the said Steinman and respondent down to the time of the institution of this suit, and to the present time." Respondent denies "that at the time of the execution of the deed from Galen Roberts to F. M. Chisenhall, or at any subsequent time, the said complainant (*i. e.*, Richmond), or any of his vendees, Roberts, Bond, Bruce, or the Clinchfield Coal Corporation, or any one else other than respondent and its vendees, had actual, continuous possession by occupancy, or by chain of title, or any possession, or ever had any possession of the said coal and other minerals and mining rights and privileges on or under the said ninety-six and three-fourth acres of land, and denies that a perfect legal and indefeasible title, or any other title thereto, has vested in said complainant, or any of the vendees claiming under him." Neither Price and Steinman nor the Coal

and Iron Company were ever in actual possession of the coal on the ninety-six-acre tract, or, as stated, *supra,* ever explored or mined the same. If they had any possession, it must in their view have been by force of the deed under which they claim, since they had no possession of any other sort. The first impression of the vice-president of the Coal and Iron Company, as late as June, 1915, was that his company did not claim the minerals on the ninety-six-acre tract.

The positive statement is made in appellant's petition, that "the evidence shows conclusively that the coal on this property has never been touched." The petition states further: "Our contention is that the coal was severed from the surface in 1874 by the deed from Price and Steinman, and that no length of possession thereafter of those claiming under W. L. Roberts, of the surface alone, could affect the rights of Price and Steinman, or those claiming under them, to the coal." Appellants also contend that W. L. Roberts is the common source of title for both Richmond and the Coal and Iron Company, and that Richmond had notice, either actual or constructive, of the deed to Price and Steinman.

For the reasons given in the citation from the case, *supra,* and upon the facts of the instant case, it is not considered that the deed from Roberts to Price and Steinman effected a severance of the coal from the surface. Everything in this case indicates that Richmond took possession under his deed as an adversary claimant, under a claim of title to the whole tract of ninety-six acres in fee. In this view it is immaterial whether he had notice or not of the deed to Price and Steinman. Indeed, if he had such notice before he took his deed and entered into possession, that fact and his conduct thereafter would serve to emphasize the hostile character of his entry and occupancy. Admittedly in possession of the surface from February 21, 1891, Richmond is presumed to have entered, in the absence of anything to the con-

trary (and there is nothing to the contrary), under a claim of title to the whole in fee. There is nothing to show that he, or those who claimed under him, ever acknowledged that his title to the land was other than it appeared upon the face of his deed. Indeed, Richmond's conduct throughout indicated a purpose to claim and exercise all the rights that a deed purporting to convey the fee in the whole tract, accompanied by possession and control of the area within his boundaries, would afford. Finding that neither Chisenhall nor W. L. Roberts had a deed from Galen Roberts to the land which he proposed to buy, Richmond insisted that a deed to the same should be made by Galen Roberts to his vendor before taking a deed from Chisenhall. Upon receipt of his deed from Chisenhall, Richmond immediately put a tenant in possession of the tract. Thereafter he exercised the rights of an owner in fee of both the surface and the underlying minerals. By deed of March, 1903, Richmond and wife conveyed specifically a one-half interest in the coal on the ninety-six-acre tract to W. H. Roberts. By deed of February, 1903 (this deed appears to have been made before the deed to Roberts), Richmond and wife and Roberts and wife sell, with general warranty, to Bruce and Bond all of the coal on the ninety-six-acre tract, reserving a vendor's lien to secure the deferred instalments of the purchase price.

One indisputable right of an owner in fee is to dispose of any portion of the fee, the timber, the mineral, or the water rights therein. Richmond undertook by his deed to Roberts, and subsequently by his joint deed with Roberts, to exercise the right of an owner in fee to dispose of the minerals on the ninety-six-acre tract.

Further, so far from recognizing the claim of another to these minerals, upon ascertainment that the Coal and Iron Company was asserting such a claim, he promptly brought a suit to remove this cloud upon his title.

This court is of opinion, upon the law and the facts of this case, that Richmond's entry upon the ninety-six-acre tract was adversary and hostile, with full intent to claim and exercise against all parties all the rights of an owner in fee with respect to the surface and sub-surface of the land purchased from Chisenhall. We are further of opinion that he entered upon this land under the title that his deed purported to convey, both as to the boundary and extent of his land and the nature of his title, and that neither he nor those claiming under him have ever acknowledged that the title to the land was anything other than it appeared upon the face of his deed, but have continued to hold the entire tract adversely. This adverse holding by Richmond continued for a far greater length of time than was necessary under the statute to establish a complete title to the land in fee, both as to the surface and the minerals, for his deed covered both.

For the reasons announced, this court concludes that there was no error in the decree of January 7, 1919, of the Circuit Court of Wise county, and that decree is affirmed.

*Affirmed.*