# Wytheville

## THE SHENANDOAH NATIONAL BANK OF WOODSTOCK v. CHARLES R. BURNER, ET AL.

June 11, 1936.

Present, All the Justices.

The opinion states the case.

*F. S. Tavenner* and *M. L. Walton, Jr.,* for the appellant.

*Charles Curry* and *Gilbert E. Pence,* for the appellees.

CAMPBELL, C. J.,* delivered the opinion of the court.

This appeal calls in question a decree entered by the Circuit Court of Shenandoah county, dismissing the bill of complaint filed by appellant against Charles R. Burner and others, appellees.

The facts in the case are as follows: Joseph D. Burner, his wife, Rebecca, and two sons, Charles R. and Clinton O. Burner, were the owners of various tracts of land in Shenandoah county. One tract was owned in severalty by the father, one tract was owned in severalty by the mother, another tract was held jointly by the father and mother, and another tract was held jointly by the father and two sons. In the year 1915 the mother died intestate, and by mutual consent, the father and sons continued to occupy all of the land in joint relationship. While so occupying the land, Charles R. and Clinton O. Burner agreed that a partition of all the land should be effectu-

---

*Due to circumstances over which we had no control, it was necessary to re-assign the writing of this opinion. This accounts for the delay in the decision.

ated by the will of the father. In the year 1919, the father, seeking to carry into effect the agreement made by the sons, executed his will, devising to Charles that portion of the land owned by the father and mother, and devising to Clinton that portion owned by the father and two sons. Upon the death of the father, in the year 1919, the will was probated and the two sons took immediate possession of the respective tracts of land as designated in the will of their father, and exercised complete acts of ownership in connection therewith.

In 1920 Clinton Burner applied to appellant for a loan, which was accorded him, and a deed of trust was executed to secure the loan. Upon default in the payment of his debt to appellant, the land was sold and a deficiency judgment was obtained against him in the sum of $4,000. It also appears in the record that appellant lent money to Charles Burner, which is secured by a deed of trust upon the land devised by his father.

In July, 1934, appellant filed its bill setting forth, among other things, that title to a portion of the land occupied and claimed by Charles Burner was in Rebecca Burner, and that upon her demise intestate, this land descended to her sons, Charles and Clinton; that no partition of this tract of land has ever been made, and therefore, title to a one-half undivided interest in the land is vested in Clinton Burner; that the appellant has the right to a partition of the land, in order that it may subject the interest of Clinton Burner to the payment of the judgment lien.

To the bill of complaint Charles Burner filed an answer and cross-bill in which it was asserted that he was the owner of the land in question, by reason of his adversary possession thereof for the statutory period. In addition to the plea of adverse possession, he asserted in his answer that both Clinton Burner and his creditor, the appellant, were estopped from asserting any claim to the land, by reason of the action of appellant in recognizing his title when it took a deed of trust upon the very land it now seeks to partition.

The learned chancellor was of opinion that the defense of adverse possession was sufficient to vest title in Charles Burner, and did not consider the defense of estoppel.

The evidence shows beyond controversy that Charles Burner was in exclusive possession of the land from the date of the probation of his father's will, claiming title thereto in fee-simple, until this suit was instituted. He paid the taxes on the land, tilled it, and, as a further reliance upon his absolute ownership, gave a deed of trust upon it to secure appellant for money lent him.

Appellant does not controvert the allegation that the acts done by appellee in support of his claim of adverse possession would ordinarily establish his right to a fee-simple title, but seeks to avoid the effect of such acts on the ground that such possession as is claimed was not adverse as a matter of law, for the reason that Charles Burner and Clinton Burner were co-parceners, due to the fact of their inheritance of the land from their mother, and that the claim of adverse possession against a co-tenant is unavailing.

The well-established rule in Virginia in regard to the relative rights of co-tenants and co-parceners is clearly stated by Judge Buchanan in *Va. Coal & Iron Co.* v. *Hylton,* 115 Va. 424, 79 S. E. 337, 339, Ann. Cas. 1915A, 741, as follows:

"It is well settled in this State that where a purchaser, if he be a stranger to the title, takes a conveyance of the whole estate in a tract of land, although his grantor was only a tenant in common with others, and in pursuance thereof enters into the exclusive possession of the land, claiming title to the whole, it is an ouster of the other co-tenants and the grantee so entering and claiming title may rely upon his adversary possession if continued the statutory period. *Johnston* v. *Va. Coal & Iron Co.,* 96 Va. 158-163, 31 S. E. 85; *Preston* v. *Va. Min. Co.,* 107 Va. 245, 248, 57 S. E. 651; Freeman on Cotenancy, section 197.

"It is also well settled that, as between tenants in common and others claiming in privity, the entry and

possession of one are ordinarily deemed the entry and possession of all, and this presumption will prevail in favor of all until some notorious act of ouster or adversary possession is brought home to the knowledge of the others. Until there is notice, actual or constructive, that the possession is hostile, it will be deemed amicable, notwithstanding the tenant's possession may have been wholly adversary. *Stonestreet* v. *Doyle,* 75 Va. 356, 378, 379, 40 Am. Rep. 731; and cases cited; *Pillow* v. *Southwest, etc., Co.,* 92 Va. 144, 23 S. E. 32, 53 Am. St. Rep. 804. Yet a tenant in common may enter adversely and claim in severalty, and where he does the statute of limitations will run in his favor and against his tenants in common. See *King* v. *Carmichael,* 136 Ind. 20, 35 N. E. 509, 43 Am. St. Rep. 303; *Clymer* v. *Dawkins,* 3 How. (U. S.) 674, 11 L. Ed. 778; *Jackson ex dem. Bradstreet* v. *Huntington,* 5 Pet. 402, 438-440, 8 L. Ed. 170; *Ricard* v. *Williams,* 7 Wheat. (20 U. S.) 59, 5 L. Ed. 398; *Caperton* v. *Gregory,* 11 Gratt. (52 Va.) 505; Tyler on Ejectment, 882; *Joyce* v. *Dyer,* 189 Mass. 64, 75 N. E. 81, 109 Am. St. Rep. 603; *Greenhill v. Biggs,* 85 Ky. 155, 2 S. W. 774, 8 Ky. Law Rep. 825, 7 Am. St. Rep. 579; *Johnson* v. *Toulmin,* 18 Ala. 50, 52, Am. Dec. 212; *Crawford* v. *Meis,* 123 Iowa 610, 99 N. W. 186, 66 L. R. A. 154, 101 Am. St. Rep. 337."

It is held in *Va. Coal & Iron Co.* v. *Richmond Coal Corp.,* 128 Va. 258, 104 S. E. 805, that a tenant in common may enter adversely and claim in severalty.

In *Russell* v. *Tennant,* 63 W. Va. 623, 60 S. E. 609, 129 Am. St. Rep. 1024, it is held that the intention to claim the land to the exclusion of the co-tenant may be shown by the acts of the claimant.

In a memorandum filed by the chancellor, this significant language appears:

"There is no conflict or dispute as to the evidence of the origin of the possession, its character, or its continuity. It is undisputed that these two brothers and the father agreed to a division of the lands, and that this division was to be effected by the father's will. To their knowl-

edge the father so made his will, and by that will they abided, and had it probated and recorded. They each held possession of their respective divisions of the land, claiming them in severalty under this will; they each took the entire rents, issues and profits from their respective divisions, occupied them exclusively and treated them openly, and with the knowledge of each other, as their own lands, and with no recognition that any one else had any interest or claim thereto. Charles Burner paid the taxes, made improvements upon his land, and encumbered it as his own; he has continued in the exclusive possession from the time of his father's death in 1919 down to the institution of this suit in 1934; a period of more than fifteen years without action or ouster.

"The agreement for the partition and the will of the father, drawn pursuant to the agreement, constituted notice to Clinton Burner that Charles Burner was not holding this land as his co-tenant; he knew that he was holding it as his own in severalty, and that he did not admit any right of Clinton in the land. Clinton Burner does not deny this and does not now claim any interest in this land held by Charles Burner; but Clinton Burner's judgment creditor does. The fact shows that that judgment creditor is in position of having taken the benefit of the division of land made by the agreement and the will, when it sold the land of Clinton Burner to pay its debt; having done that it now repudiates that division of the land in order to subject a portion of the division held by Charles Burner to the payment of his brother's debt."

We fully concur in the conclusion reached by the lower court, and therefore affirm the decree.

*Affirmed.*