## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Bailey

v.

Clark

December 27, 1963

By JUDGE ALEX H. SANDS, JR.

This case involves two primary issues, (1) the nature of the alley in question, and (2) whether the defendants have acquired title thereto by adverse possession.

*Findings of Fact*

The evidence in the case, heard ore tenus, establishes to the satisfaction of the Court the following facts pertinent to the issues under consideration:

(1) That the alley in question was carved out of the original tract (comprised of the land now designated as Lots 600 through 608 fronting on Main Street and Nos. 5 and 7 fronting on 6th Street, all contiguous to the 12-foot alley in question) by deed from Fleming Jones and Mary S. James to Hugh W. Fry in 1860. (*See* Plaintiff's Exhibit # 1.

(2) That at the time the original tract was partitioned into four parcels and conveyed from Price and Hall to Meredith in 1873, the alley was designated as "an alley in common to the whole property known as the Arlington property" (comprising the present Lots 600 through 608 on Main Street and Nos. 5 and 7 N. 6th Street).

(3) That at the time at which John D. Chapin and Thomas W. Clark acquired No. 7 North 6th Street, the alley in question was a private alley in common to No. 7 North 6th Street and Lots 606 and 608, the interest of the then owners of No. 7 North 6th Street and Nos., 606 and 608 Main Street being the right of use thereof as tenants in common.

(4) That at the time of acquisition by the defendant and John D. Chapin of No. 7 North 6th Street on July 9, 1920, the defendant and said Clark painted (and subsequently posted) upon the north wall of No. 7 North 6th Street and upon the south side of the wall on the north side of the alley signs notifying the public that the alley was private property, used for private parking and warning "unauthorized cars" to "keep out," and that these or comparable signs have been maintained by defendant continuously until the present time.

(5) That defendant acquired the sole interest in No. 7 North 6th Street from his deceased partner's estate on June 6, 1947, and that at all times since the acquisition of No. 7 North 6th Street by defendant and his partner in 1920, defendant and employees of his company have been using the alley in question for the parking of vehicles during business hours and that defendant has prevented the use by members of the public other than his co-tenants (owners of Nos. 606 and 608 Main Street) of the alley during business hours and has attempted to assert his right of exclusive use of the alley even against one co-tenant.

(6) That his efforts to assert exclusive right of user against his co-tenants has not been successful and that while shortly after the witness Urbach's acquisition of 608 Main Street in 1947, defendant attempted to withhold the right of use of the alley from Urbach, but the latter refused recognition of such right and continued to use the alley over defendant's objection.

(7) That upon occasion, though infrequently, both complainant and the Urbach brothers have used the alley in question for parking, and both have used it frequently as a means of ingress and egress to and from the rear of their respective properties, the Urbachs since acquisition of 608 and complainant since acquisition of 606.

(8) That such use as was made of the alley by complainant and the Urbachs was not, as defendant contends, by virtue of permission by him granted, but rather in open reliance upon their respective rights thereto as tenants in common with the defendant.

### Conclusions of Law

(a) *Nature of Interest in Alley*

Under any view which be taken of the evidence in this case, the defendant, Clark, and his partner, Chapin, acquired upon the purchase of No. 7 an interest in the alley along with the owners of Nos. 606 and 608 East Main Street and with such owners became co-tenants (here tenants in common) as to the rights of user of the alley. Each successive owner of No. 7 North 6th Street and Nos. 606 and 608 Main in the chain of title acquired what amounted to a fee in that portion of the alley which abutted his parcel subject to the right, in common with other abutting land owners, of ingress and egress of each such owner to and from his respective parcel. *Cogeto v. Dart*, 183 Va. 182 (1944). If the language of the deed of 1873 from Price and Hall to Meredith that the alley was "an alley in common to the whole property" meant what it said, each lot acquired thereby a right of user of the alley which was a right appurtenant to such lot and which passed to each subsequent purchaser of such lot. *French v. Williams*, 82 Va. 462 (1886).

But even though the language of the deed were completely disregarded, the subsequent conveyances which described No. 7 North 6th Street and Nos. 606 and 608 East Main Street as adjacent to the alley, under the facts of this case, would be sufficient to give such abutting owner rights of user as co-tenants in the alley which had been carved out of the original tract owned by a common grantor. *Gish v. Roanoke*, 119 Va. 519 (1916); *Walters v. Smith*,

186 Va. 159 (1947). Under any view, therefore, which may be taken, complainant and defendant were and are co-tenants as to the right of user of the alley unless, as defendant contends, he has acquired title thereto or the exclusive right of user through adverse possession.

(b) *Issue of Adverse Possession*

Defendant and complainant's predecessors in the chain of title having been established to have been co-tenants as to the right of user of the alley, the applicable Virginia law appears rather plain. As to co-tenants and those claiming in priority, the entry and possession of one is ordinarily deemed the entry and possession of all, *Buchanan v. King*, 63 Va. (22 Gratt.) 414 (1872), and this presumption prevails in favor of all until some notorious act of ouster or adversary possession is brought home to the knowledge of the others and until such time as there is notice, actual or constructive, that the possession is hostile, it will be deemed amicable even though the co-tenants' possession may have been wholly adversary. *Stonestreet v. Doyle*, 75 Va. 356 (1881); *Shenandoah, etc., Bk. v. Burner*, 166 Va. 590 (1936). And while it is true that a co-tenant may enter adversely and claim in severalty, *Va. Coal and Iron Co. v. Richmond Coal Corp.*, 128 Va. 258 (1920), and while it is further true that the intention to hold the land (or to exercise the interest) adversely to other co-tenants may be shown by acts of the co-tenant asserting adverse possession, *Shenandoah Mat. Bk. v. Burner, supra,* yet the possession or use of one co-tenant is *prima facie* the possession or the use of the other co-tenant or co-tenants and the possession or use by one is never adverse to the title or right of user of the others unless there be proved *an actual ouster or disseisin*, or some other act amounting to *total denial* of the others' rights as co-tenants. *Fry, et al. v. Payne, et al.*, 82 Va. 759 (1887). The elements necessary for establishment of rights under adverse possession by one co-tenant against another are thus clearly set forth in *Braxton v. Phipps*, 183 Va. 771, at pages 773-774 (1945):

Each and every tenant in common is entitled to an undivided portion of the whole, hence

possession by one is regarded as possession in the interest of all unless it be expressly denied. In order for one co-tenant to obtain ownership and title by adverse possession, there must be (1) a clear, positive, and continued disclaimer of title, and (2) the assertion of an adverse right brought to the knowledge of the other co-tenant.

How then does defendant's evidence in the instant case measure up to the minimum norm set by the above authorities? The sign posted by defendant at the alley's entrance upon the acquisition of No. 7 North 6th Street and since maintained read:

> March 1, 1926
> This is private property used for
> private parking. *Unauthorized cars*
> Keep Out.
> Chapin & Clark
> *Agents.*
>
> (Emphasis added)

Now certainly there is nothing in the language of this sign which would itself put a tenant in common as to the right of user of the alley on notice that he was considered by his co-tenant as an "unauthorized" user. Nor could the fact that defendant, his former partner, and his employees had used the alley for parking continuously since acquisition of No. 7 North 6th Street be considered as any indication to co-tenants that they did not have the same privilege, if taken advantage of. Indeed the fact that the prohibitory warning of the sign was given by Chapin and Clark not as individuals or partners but as *agents* would suggest to any person the fact that they were acting for persons other than themselves, and who would be such "other persons" if not those enjoying joint privileges in the use of the alley?

Nor is there any evidence of any direct efforts of ouster by defendant of any co-tenant until his run-in with complainant shortly before the institution of this suit. True, defendant and associates had used the alley for parking continuously since the mid twenties,

and conceding that defendant had frequently ejected members of the public other than co-tenants, this could not conceivably be construed as an assertion of adverse rights against co-tenants and the fact that no one had ever challenged defendant's use of the alley (upon which fact defendant relies) is no evidence of adverse holding against a co-tenant, for continued and unchallenged use by defendant is completely consistent with a continued, even though infrequently exercised, right of user by other co-tenants. A co-tenant is not required to object to exclusive use on the part of a co-tenant to avoid a claim of adverse possession.

But there is evidence of complainant that he had frequently exercised his right of user after his acquisition of No. 606 East Main Street and that his use thereof was never challenged by defendant until shortly prior to institution of this suit. There is further evidence that the witness Howard Urbach began using the alley immediately after his acquisition of No,. 608 East Main Street, and at that time, defendant had unsuccessfully attempted to withhold use from him and that he, Urbach, had continued to use the alley for some years thereafter until his business made parking at other locations more practicable. Defendant admits the discussion on this occasion but thought it concerned conditions of "permission" to use rather than refusal of user. Urbach being entitled to rights of user as a co-tenant, he was in no need of "permission" from a co-tenant to exercise rights of user which he already possessed. But even had the defendant proved adverse user and notice thereof to Urbach, it would still be necessary to establish the same thing as to either complainant or his predecessor in the chain of title, and as to this, evidence is completely lacking.

To sum up, the most that defendant's evidence discloses, even if we accept it as uncontradicted, is that (1) from the mid-twenties to date, defendant and his employees have used the alley consistently for parking of vehicles, (2) that during the entire period, defendant has posted the alley for private use against "unauthorized" vehicles, (3) that upon frequent occasions, defendant has ejected "unauthorized" vehicles from the alley (never the complainant's or any predecessor in title), and (4) has at times imposed conditions for use of the alley upon

members of the public (never upon complainant or predecessors in title). This evidence, even if it be accepted as uncontradicted (and this is not the case), falls far short of the acts necessary to constitute ouster of and title by adverse possession by one co-tenant as to another. *Braxton v. Phipps, supra.*

Defendant, while asserting title to the alley contends that even though he should fail on this issue, nevertheless, the evidence clearly establishes that he has acquired exclusive parking privileges by prescription. Not only does the evidence in this case utterly fail to establish *quoad* the parking use enjoyed by defendant and his predecessors in title, the essential characteristics of exclusiveness, visibility, continuity, and adversity required as conditions precedent to the existing of prescription, but there is a different and independent reason why defendant did not and could not acquire the prescriptive right claimed. As to the 65 feet of the alley abutting defendant's property, he owned the servient fee. No amount of user, therefore, as to this particular portion of the alley by defendant could create any prescriptive right of user therein. *Scott v. Beutel*, 64 Va. (23 Gratt.) 1 (1873).

### Burden of Proof

Defendant's answer was under oath as requested by complainant's initial pleading. Defendant took the position that under Code § 8-123 its answer asserting that the defendant had acquired title by adverse possession became evidence which case the burden of disproving these allegations upon complainant. The Court refused to accept this interpretation of the statute and required the defendant to introduce evidence in support of his defense. It is believed that this ruling was correct, but even though erroneous, it would not affect the ultimate conclusion reached by the Court in view of the character of the evidence which has been introduced by complainant.

### Damages

Complainant seeks damages in the form of parking charges incurred during the period in which use of the alley in question has been denied him. Complainant could

have immediately applied for a temporary injunction and upon posting the required bond would probably have been awarded the temporary relief sought. But regardless of what would have been the outcome of such application for temporary relief, this available procedure was not resorted to and it is not thought, under the circumstances, that monetary damages should be awarded complainant.

## Conclusion

For the above reasons, complainant will be granted the injunctive·relief sought, but no damages.